1
2
3
4

KLECZEK LAW OFFICE
David A. Kleczek (SBN 244045)
825 Washington Street, Suite 301
Oakland, CA 94607
Telephone:  (510) 291-4055
Facsimile:  (510) 663-7102
david@kleczeklaw.com

5
6
7
8

LAW OFFICES OF H. PAUL BRYANT
H. Paul Bryant (SBN 126037)
825 Washington Street, Suite 303
Oakland, CA 94607
Telephone:  (510) 272-0700
Facsimile:  (510) 272-0776
hpaulbryantlaw@gmail.com

9

Attorneys for Plaintiff Bobby Jones
And the Proposed Class

10

11

## UNITED STATES DISTRICT COURT

12

### NORTHERN DISCTRICT OF CALIFORNIA

13

14
15

BOBBY JONES, individually, and on behalf
of all others similarly situated,

16

                    Plaintiffs,

17
v.

18
19
20

PROGRESSIVE CASUALTY INSURANCE
COMPANY, THE PROGRESSIVE
CORPORATION, and MITCHELL
INTERNATIONAL, INC.; and DOES 1
through 50, inclusive,

21

                    Defendants.

22
23
24

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.**

**CLASS ACTION**

**COMPLAINT FOR UNLAWFUL,
UNFAIR AND DECEPTIVE BUSINESS
PRACTICES, FRAUD, NEGLIGENT
MISREPRESENTATION, BREACH OF
CONTRACT, BREACH OF IMPLIED
COVENANT OF GOOD FAITH AND
FAIR DEALING and DECLARATORY
RELIEF**

Unlimited Civil Case

**DEMAND FOR JURY TRIAL**

25
26
27
28

Plaintiffs BOBBY JONES, individually and on behalf of all others similarly situated, hereby complain against Defendant PROGRESSIVE CASUALTY INSURANCE COMPANY and MITCHELL INTERNATIONAL, INC. and DOES 1 through 50 (generally referred to collectively herein as "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1.      In 2010, property damage claims from automobile accidents amounted to $76 billion.[1]  A large portion of those property damages claims are made by consumers to their own automobile insurance company.  Where the damage to the vehicle exceeds the cost to repair, the vehicle is deemed a total loss, and the consumer is entitled to recover for the reasonable value of the vehicle just prior to the collision.  The consumer is paid by her insurer based on finding "comparable automobiles" and using those as the measuring stick to determine the value.

2.      California's Insurance Code sets standards for evaluating and paying automobile total loss claims, and is set forth in 10 C.C.R. §2695.8.  For first party claims, the Insurer must follow a set of guidelines that helps it determine which vehicles are a "comparable automobile". 10 C.C.R. §2695.8(b)(2).  The "comparable automobiles" are used to make an offer to the insured for total loss property claims.

3.      Since at least 2010, Progressive Casualty Insurance Company and Mitchell International Inc., have worked as partners for determining the value of total loss claims. Progressive Casualty Insurance Company has outsourced its duty to find "comparable "automobiles" for valuation purposes to Mitchell International Inc.

4.      To increase its profit margins, Progressive Casualty Insurance Company and Mitchell International Inc. have engaged in unlawful, unfair and deceptive business practices which facilitate and enable them present 'lowball' property damage offers to its insured where there is a total loss situation.  To wit, the Defendants failed to use lawful "comparable automobiles" as required by law for purposes of determining the total loss value.

---

[1] U.S. Department of Transportation, 2010.

2

5.      In their scheme to reduce the value of the "comparable automobiles", the Defendants employed methods contrary to the California Insurance Regulations, and constituted outright deception.  Defendants used out of market "comparable vehicles".  Defendants failed to fairly adjust for differences between "comparable vehicles" and the total loss vehicles. Defendants routinely used as "comparable vehicles" vehicles that had previously been deemed a total loss, without making any adjustments for the differences in the vehicles.

6.      Progressive Casualty Insurance Company at all relevant times had full knowledge that Mitchell International Inc. was engaging in a scheme to defraud insurers by undervaluing the "comparable automobiles".  All the "comparable vehicle" reports prepared by Mitchell International Inc. are disclosed to Progressive Insurance Company.  Thus, Progressive Insurance Company knew or should have known of this scheme to illegally deflate the "comparable vehicles".  Further, Progressive Insurance Company cannot contract away its obligations to operate lawfully to Mitchell International Inc. to increase its profit margins.

## PARTIES

7.      Plaintiff Bobby Jones is an individual over 18 years of age.  He is, and at all relevant times was, a resident of Contra Costa County, California.

8.      Defendant Progressive Casualty Insurance Company is a group of insurance companies operating under the umbrella of The Progressive Corporation (Hereinafter the Progressive Companies or Progressive, collectively).  According to The Progressive Corporation's 2015 balance sheet, they earned $1,300,500,000.00 after taxes in net income primarily through the insurance business.

9.      Defendant Mitchell International Inc. is third party provider which provides third party administrative services for claims administration.  Mitchell International Inc. is a Delaware Corporation doing business.  In this case Mitchell International Inc. provided claims services for Progressive relating to the valuation of total loss vehicles in the State of California.

10.      Defendants DOES 1 through 50 are persons or entities whose true names and capacities are presently unknown to Plaintiff, who therefore sues them by such fictitious names.

1  Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named

2  defendants perpetrated some or all of the wrongful acts alleged herein, is responsible in some

3  manner for the matters alleged herein, and is jointly and severally liable to Plaintiff.  Plaintiff will

4  seek leave of court to amend this complaint to state the true names and capacities of such

5  fictitiously named defendants when ascertained.

6       11.     At all times mentioned herein, each named defendant and each DOE defendant

7  was the agent or employee of each of the other defendants and was acting within the course and

8  scope of such agency or employment and/or with the knowledge, authority, ratification and

9  consent of the other defendants.  Each defendant is jointly and severally liable to Plaintiff and to

10  the members of the proposed class.

11                          **JURISDICTION AND VENUE**

12       12.     This Court has subject matter jurisdiction of the claims asserted herein pursuant to

13  28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value

14  of $5,000,000, exclusive of interest and costs, and is a class action in which members of the

15  putative plaintiff class are citizens of States different from Defendant.

16       13.     Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendants

17  regularly transact and solicit business in this District.

18       14.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(a) because

19  Plaintiffs' and the Defendants are citizens of different states.

20       15.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because

21  Defendant resides here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events

22  and omissions giving rise to this action occurred in this District.

23                  **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

24       16.     At all relevant times, Defendants, and each of them, engaged in various schemes to

25  deflate the value of declared "total loss vehicles" (vehicles where an election is made to forego

26  any vehicle repair) in order to pay first party insureds less than the actual pre-loss value of the

27  total loss vehicle.

28

17.     Progressive and Mitchell International Inc. each represented to its first party insureds, either directly or indirectly through their agents, that it was using "comparable vehicles" to determine the value of the total loss vehicle.  Instead, Progressive and Mitchell International Inc. employed various schemes to select the 'vehicles' in a manner which allowed them to reduce the calculated value they paid for "total loss vehicles".  By affirmatively representing to the Insured that they were using comparable vehicles, when Progressive and Mitchell International Inc. knew or should have known such representation was false, they and their agents misrepresented the essential facts to the first party insured that they were using 'comparable vehicles' in determining the value of the total loss vehicle.

18.     At all relevant times, Progressive and Mitchell International Inc. had actual knowledge that the representations they made to Bobby Jones and other class members as herein alleged were false. Progressive and Mitchell collected and used information about whether a comparable car was previously a total loss vehicle.  Progressive and Mitchell used this information when it was to their advantage; when the insured car was a prior total loss Progressive and Mitchell used this information to reduce the valuation of the insured's car. However when the comparable vehicle was being offered, Progressive and Mitchell suppressed the information and failed to properly adjust the value of the car.

19.     One scheme was for Progressive and Mitchell International Inc. to use vehicles with salvage titles as a "comparable vehicle" without disclosing the fact that they were salvage vehicles, and without making any adjustment for the fact that it used a salvage vehicle as a comparable.

20.     In a second scheme, Progressive and Mitchell International Inc. failed to properly seek, use and report Dealer quotes as required by law.  Where no 'comparable vehicles' are available to determine the value of the total loss vehicle, insurers are entitled to use "the average of two or more quotations from two or more licensed dealers in the local market area;". 10 C.C.R. 2596.8(b)(3)(B).  Progressive and Mitchell International Inc. had a practice to not contact licensed dealers to obtain a quote.  The Defendants fabricated contacts with dealers as well as deflated the

quote obtained by the dealers.  The failure to properly use Dealer quotes allowed them to reduce the calculated value they paid for "total loss vehicles".

21.     In a third scheme, Progressive and Mitchell International Inc. had a policy of ignoring "comparable vehicles" from licensed dealers that it deemed to be priced too high. Progressive and Mitchell International Inc. would instead use non-compliant "comparable vehicles" whose representation as a "comparable vehicle" was were either fabricated, a deflated value vehicle, a preciously used total loss vehicles (i.e., salvage vehicle) , or through some other misrepresentation concerning the "comparable vehicles".

22.     In a Fourth scheme, Progressive and Mitchell International Inc. had a policy of ignoring the Insured's purchase price for the vehicle; even when the purchase was made during the time frame in which other supposedly "comparable vehicles" were considered.

23.     10 C.C.R. 2695.8(b) addresses the claims handling procedures and requirements for determining the total loss value, and states as follows:

> (b) In adjusting and settling first party automobile **TOTAL LOSS** claims the following standards shall apply:(1) The insurer may elect a cash settlement that shall be based upon the actual cost of a "comparable automobile" less any **DEDUCTIBLE** provided in the policy. This cash settlement amount shall include all applicable taxes and one-time fees incident to transfer of evidence of ownership of a comparable automobile. This amount shall also include the license fee and other annual fees to be computed based upon the remaining term of the loss vehicle's current registration. This procedure shall apply whether or not a replacement automobile is purchased.
> (A) If the insured chooses to retain the loss vehicle, the cash settlement amount shall include the sales tax associated with the cost of a comparable automobile, discounted by the amount of sales tax attributed to the salvage value of the loss vehicle. The cash settlement amount shall also include all fees incident to transfer of the claimant's vehicle to salvage status. The **SALVAGE VALUE** may be deducted from the settlement amount and shall be determined by the amount for which a **SALVAGE** pool or a licensed salvage dealer, wholesale motor vehicle auction or dismantler will purchase the salvage. If requested by the claimant, the insurer shall provide the name, address and telephone number of the salvage dealer, salvage pool, motor vehicle auction or dismantler who will purchase the salvage. The insurer shall disclose in writing to the claimant that notice of the salvage retention by the claimant must be provided to the Department of Motor Vehicles and that this notice may affect the loss vehicle's future resale and/or insured value. The disclosure must also inform the

claimant of his or her right to seek a refund of the unused license fees from the Department of Motor Vehicles.

(2) A "comparable automobile" is one of **LIKE KIND AND QUALITY**, made by the same manufacturer, of the same or newer model year, of the same model type, of a similar body type, with options and mileage similar to the insured vehicle. Newer model year automobiles may not be used as comparable automobiles unless there are not sufficient comparable automobiles of the same model year to make a determination as set forth in Section 2695.8(b)(3), below. Any differences between the comparable automobile and the insured vehicle shall be permitted only if the insurer fairly adjusts for such differences. Any adjustments from the cost of a comparable automobile must be discernible, measurable, itemized, and specified as well as appropriate in dollar amount and so documented in the claim file. Deductions taken from the cost of a comparable automobile that cannot be supported shall not be used. The actual cost of a comparable automobile shall not include any deduction for the condition of a loss vehicle unless the documented condition of the loss vehicle is below average for that particular year, make and model of vehicle. This subsection shall not preclude deduction for prior and/or unrelated damage to the loss vehicle. A comparable automobile must have been available for retail purchase by the general public in the local market area within ninety (90) calendar days of the final settlement offer. The comparable automobiles used to calculate the cost shall be identified by the vehicle identification number (VIN), the stock or order number of the vehicle from a licensed dealer, or the license plate number of that comparable vehicle if this information is available. The identification shall also include the telephone number (including area code) or street address of the seller of the comparable automobile.

(3) The insurer shall take reasonable steps to verify that the determination of the cost of a comparable vehicle is accurate and representative of the market value of a comparable automobile in the local market area. Upon its request, the department shall have access to all records, data, computer programs, or any other information used by the insurer or any other source to determine market value. The cost of a comparable automobile shall be determined as follows and, once determined, shall be fully itemized and explained in writing for the claimant at the time the settlement offer is made:
(A) when comparable automobiles are available or were available in the local market area in the last 90 days, the average cost of two or more such comparable automobiles; or,

(B) when comparable automobiles are not available or were not available in the local market area in the last 90 days, the average of two or more quotations from two or more licensed dealers in the local market area; or,

(C) the cost of a comparable automobile as determined by a computerized automobile valuation service that produces statistically valid fair market values within the local market area; or

(D) if it is not possible to determine the cost of a comparable automobile by using one of the methods described in subsections (b)(3)(A), (b)(3)(B) and (b)(3)(C) of this section, the cost of a comparable automobile shall otherwise be supported by documentation and fully explained to the claimant. Any adjustments to the cost of a comparable automobile shall be discernible, measurable, itemized, and specified as well as appropriate in dollar amount and so documented in the claims file. Deductions taken from the cost of a comparable automobile that cannot be supported shall not be used

(4) In first party automobile total loss claims, the insurer may elect to offer a replacement automobile which is a specified comparable automobile available to the insured with all applicable taxes, license fees and other fees incident to transfer of evidence of ownership of the automobile paid by the insurer at no cost other than any deductible provided in the policy. The offer and any rejection thereof must be documented in the insurer's claim file. A replacement automobile must be in as good or better overall condition than the insured vehicle and available for inspection within a reasonable distance of the insured's residence.

## **Plaintiff Bobby Jones**

24.     On October 21, 2015, Bobby Jones purchased a 1999 Chevrolet Venture for a list price of $3,250.00, before tax, title and license.

25.     On November 18, 2015 the Mr. Jones 1999 Chevrolet Venture was involved in a serious automobile accident.

26.     At all relevant times, Mr. Jones had procured a Progressive automobile insurance policy that covered the 1999 Chevrolet Venture, and included full comprehensive coverage for his 1999 Chevrolet Venture.

27.     Shortly after the November 18, 2015 crash, Mr. Jones filed a claim for the property damages relating to the 1999 Chevrolet Venture.

28.     Attached hereto this Complaint, and as Exhibit A, is a true and correct copy of the automobile insurance policy Progressive issued to Bobby Jones for his 1999 Chevrolet Venture. The contract between Progressive and Bobby Jones stated Progressive would "pay for sudden, direct and accidental loss to a: covered auto."

29.     Progressive accepted the claim by Bobby Jones, and 1999 Chevrolet Venture was a "total loss vehicle", and attempted to negotiate a settlement with Bobby Jones.

30.     Progressive made a full and final offer to settle the claim for $2,488.40.  This was

$761.60 less than Mr. Jones had paid less than a month earlier.

31.     Bobby Jones asserted that he had just purchased the vehicle on October 21, 2015, and requested that Progressive use that list price as the comparable vehicle.  Progressive refused to consider this sale as a comparable vehicle, which is Progressive's policy.  Mitchell has a policy wherein it refuses to consider the value of the Insured's own vehicle.

32.     Instead, Progressive obtained three other "comparable vehicle" quotes through Mitchell International Inc.  Mitchell and Progressive used two other vehicles, one from Portland Oregon and the other from Oklahoma City, Oklahoma.

33.     For example, the 1999 Chevrolet Venture, VIN 1GNDX03E2XD155227, from Oklahoma City, Oklahoma was represented by Progressive and Mitchell as a "comparable vehicle".  Progressive and Mitchell asserted this "comparable vehicle", after adjustments, was worth $2,413.41.  This vehicle was in fact a prior 'total loss vehicle' (aka "salvage title").  Progressive and Mitchell are in the business of tracking "salvage vehicles" and have easy access to databases which quickly and efficiently identify such vehicles as being salvaged.  Progressive and Mitchell consistently use such information to set rates and determine (ie. Reduce) payment benefits when a previously salvaged vehicles suffers another loss.  The fact that 1999 Chevrolet Venture, VIN 1GNDX03E2XD155227 was a prior total loss vehicle was never disclosed by Progressive or Mitchell, and it was never adjusted for in the appraisal determination, despite their having full knowledge this was a prior total loss vehicle.

34.     The third "comparable vehicle" Mitchell and Progressive used were alleged quotes from dealers in the area.  Mitchell and Progressive claim they obtain quotes from Calidad Motors and Ace Auto Dealers for $3,000.00 and $2,600.00 respectively.  However, Mitchell and Progressive never actually obtained a quote from a licensed dealer.  They misrepresented their claims to both Bobby Jones and the dealers, and failed to other use good faith and fair dealing in this valuation method.

35.     Based on these and other misrepresentations, Bobby Jones was induced to accept a reduced valuation of his 1999 Chevrolet Venture.

9

36.     Progressive and Mitchell operate on an unequal playing field, compared to its customers and insured.  Progressive and Mitchell write the policies, have access to vast amounts of information and finances, and has teams of lawyers should a claim be litigated.  Insureds on the other hand, usually do not have the knowledge necessary to adequately determine if the value Progressive and Mitchell are assigning to the total loss vehicle is necessary.  Insureds, having just lost the use of their vehicle, are at a significant bargaining disadvantage when Progressive and Mitchell offer compensation based on incomparable vehicles because the Insured frequently depend on the immediate payment of money in order to secure a replacement vehicle so they can get themselves or others to school, work or otherwise handle their daily responsibilities.

37.     That is reason for the California Insurance Regulations relating to fair claims settlement practices is to avoid misrepresentation and fraud by insurers in adjusting automobile claims.

## CLASS ACTION ALLEGATIONS

38.     Pursuant to California Code of Civil Procedure § 382, Plaintiff brings this class action on behalf of himself and all other persons similarly situated.  Plaintiff brings this action in a representative capacity to remedy and put an end to the ongoing unlawful, unfair and fraudulent business practices alleged herein, and to seek redress on behalf of all those persons who have been affected thereby.  Private enforcement is necessary and places a disproportionate financial burden on the Plaintiffs in relation to their stake in the matter.

39.     Plaintiffs seek to certify the following class and subclass:

> Injunctive Relief Class:  All residents of California who, at any time within the four years prior to the filing of this Complaint, who were first party insureds making claims to Progressive for total loss vehicles.

> Restitution Subclass:  All residents of California who, at any time within the four years prior to the filing of this Complaint, were first party insured making claims to Progressive for total loss vehicles.

40.     Plaintiffs are unable to state the precise number of members of the class or

subclass (generally referred to together herein as "the class") because that information is in the sole possession of Progressive and Mitchell.  Plaintiff estimates that the class consists of hundreds, if not thousands, of individuals throughout the State of California, and is so numerous that joinder of all members would be impracticable.  The exact size of the class, and the identity of the members thereof, will be readily ascertainable from the business records of Progressive, Mitchell and/or its agents.

41.     There is a community of interest among the members of the class in that there are questions of law and fact common to the class that predominate over questions affecting only individual members.  Proof of a common set of facts will establish the liability of Defendants, and the right of each member of the class to recover.

42.     Plaintiffs' claims are typical of those of the class they seek to represent, and they will fairly and adequately represent the interests of the class and subclass.  Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

43.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by the individual class members are small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class members to seek redress individually.  The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Defendant, and would establish incompatible standards of conduct.  Further, a class action is in the interests of justice because many class members are likely unaware that Progressive and Mitchells' conduct is illegal, are unaware of the scope and extent of the Progressive/Mitchell scheme, and lack the financial and informational resources to protect their rights.

## FIRST CAUSE OF ACTION
### Violations of Business and Professions Code § 17200, *et seq*.

44.     Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

45.     Business and Professions Code § 17200 et seq., often referred to as the "Unfair Competition Law" or "the UCL," defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.  The UCL provides that a court may order injunctive relief and restitution as remedies for any violations of the UCL.

46.     Beginning on an exact date unknown to Plaintiffs, but at all times relevant herein and during the four years preceding the filing of the Complaint in this action, Progressive and Mitchell committed and they continue to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein in connection with the valuation of claims made on first party insurance claims total loss vehicles.

47.     The business acts and practices alleged herein constitute unfair business practices in that said acts and practices offend public policy and are substantially injurious to the public. The acts and practices of Progressive and Mitchell violate California public policy that is tethered to regulations governing persons engaged in the practice of adjusting claims on automobile insurance policies.  For example the unfair Trade Settlement Practices Regulations, set forth in 10 C.C.R. 2695.6, et seq. were promulgated in order to promote the good faith, prompt, efficient and equitable settlement of claims on a cost effective basis. 10 C.C.R. §2695.1(2).

48.     The business acts and practices alleged hereinabove also violate the public policies against misrepresentation and fraud by automobile insurance companies, and their agents, to its insureds.

49.     The business acts and practices alleged herein constitute fraudulent business practices in that said acts and practices are likely to deceive members of the public as to their legal rights and obligations, and by use of such deception, may preclude such individuals from exercising legal rights to which they are entitled.  In particular, Defendants false communications which misuse "comparable vehicles" and the devaluation of total loss vehicle are submitted to its insured, and is meant to be relied upon by its insured.  The information it provides is known to be untrue or deceitful, and intended to induce the insured to settle for a reduced valuation.

50.     The unlawful, unfair and fraudulent business acts and practices of Progressive and

Mitchell described herein present a continuing threat to the public in that Progressive and Mitchell are currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

51.     Based on the language and communications from Progressive and Mitchell, Plaintiff reasonably believed he had no reasonable option but to accept the amount offered by Progressive for his 1999 Chevrolet Venture.

52.     As a direct and proximate result of the acts and practices described herein, Progressive, Mitchell and its agents have received and collected money from Plaintiffs and class members, and failed to fairly pay for claims made by those class members.  Progressive and Mitchell should be ordered to provide full and complete restitution of all amounts collected from class members.

53.     Pursuant to Business and Professions Code § 17203, Plaintiffs seek an order enjoining Progressive and Mitchell from engaging in such acts and practices as hereinabove alleged, and providing appropriate restitution to Plaintiffs and members of the class.

54.     Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs seek recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action.  Plaintiffs do not seek any relief greater than or different from the relief sought for the class.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION
### Fraud

55.     Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

56.     Progressive and Mitchell intentionally and knowingly made false statements to Bobby Jones about the value of his car to induce him to accept a reduced amount on his automobile insurance claim.

57.     Bobby Jones reasonably relied upon the misrepresentations.

58.     Bobby Jones suffered monetary damage as a direct result.

13

WHEREFORE, Plaintiffs pray for declaratory and injunctive relief as set forth below.

### THIRD CAUSE OF ACTION
### Negligent Misrepresentation

59.     Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

60.     Progressive and Mitchell negligently made false statements to Bobby Jones about the value of his car to induce him to accept a reduced amount on his automobile insurance claim.

61.     Bobby Jones reasonably relied upon the misrepresentations.

62.     Bobby Jones suffered monetary damage as a direct result.

WHEREFORE, Plaintiffs pray for declaratory and injunctive relief as set forth below.

### FOURTH CAUSE OF ACTION
### Breach of Contract – Progressive

63.     Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

64.     Progressive agreed to pay Bobby Jones for the reasonable value of his vehicle if it was a total loss vehicle, based on the contract contained in Exhibit A.

65.     Progressive breached this contract by misrepresenting material facts to Mr. Jones Detriment, and failing to pay the reasonable value for the claim.

66.     As a result, Mr. Jones accepted less than his vehicle was worth, and was otherwise damages.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

Plaintiffs respectfully pray for relief as follows:

1.     For an order certifying the proposed class and subclass;

2.     For an order finding and declaring that Progressive and Mitchells' acts and practices as challenged herein are unlawful, unfair and fraudulent;

3.     For an order preliminarily and permanently enjoining Progressive and Mitchell

1    from engaging in the practices challenged herein;

2        4.    For an order on behalf of the subclass against Progressive and Mitchell of

3    restitution and/or disgorgement in an amount to be determined at trial;

4        5.    For an accounting;

5        6.    For pre-judgment interest to the extent permitted by law;

6        7.    For an award of attorneys' fees, costs and expenses incurred in the investigation,

7    filing and prosecution of this action under any applicable provision of law;

8        8.    For declaratory relief; and

9        9.    For such other and further relief as the Court deems proper.

10

11   Dated: December 2, 2016                    Respectfully Submitted,

12

13                                    ____/S/_____
                                      DAVID A. KLECZEK
14                                    Attorney for Plaintiffs

15                        **<u>DEMAND FOR JURY TRIAL</u>**

16        Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all

17   triable claims asserted in this Complaint.

18

19   Dated: December 2, 2016                    Respectfully Submitted,

20

21                                    ____/S/_____
                                      DAVID A. KLECZEK
22                                    Attorney for Plaintiff

23

24

25

26

27

28

# EXHIBIT A



# CALIFORNIA
## AUTO POLICY



Form 9611D CA (10/14)
version 1.0



# CONTENTS

**LIMITS OF FUTURE COVERAGE** ..................................................................... 1

**INSURING AGREEMENT** ................................................................................. 1

**GENERAL DEFINITIONS** ................................................................................ 1

**PART I—LIABILITY TO OTHERS**
Insuring Agreement .................................................................................... 3
Additional Definitions ................................................................................. 3
Additional Payments .................................................................................. 4
Exclusions ................................................................................................. 4
Limits of Liability ........................................................................................ 5
Financial Responsibility Laws .................................................................... 6
Other Insurance ........................................................................................ 6
Out-of-State Coverage .............................................................................. 7

**PART II—MEDICAL PAYMENTS COVERAGE**
Insuring Agreement .................................................................................... 7
Additional Definitions ................................................................................. 7
Exclusions ................................................................................................. 8
Limits of Liability ........................................................................................ 9
Unreasonable or Unnecessary Medical Expenses ..................................... 9
Other Insurance ....................................................................................... 10

**PART III(A)—UNINSURED/UNDERINSURED MOTORIST
BODILY INJURY COVERAGE**
Insuring Agreement .................................................................................. 10
Additional Definitions ............................................................................... 10
Exclusions ............................................................................................... 12
Limits of Liability ...................................................................................... 12
Other Insurance ....................................................................................... 13
Arbitration ................................................................................................ 14

**PART III(B)—UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE**
Insuring Agreement—Uninsured Motorist Property Damage Coverage .... 14
Insuring Agreement—Uninsured Motorist Collision
    Deductible Waiver Coverage ............................................................... 14
Additional Definitions ............................................................................... 15
Exclusions ............................................................................................... 16
Limits of Liability ...................................................................................... 16
Other Insurance ....................................................................................... 17
Arbitration ................................................................................................ 17

**PART IV—DAMAGE TO A VEHICLE**

Insuring Agreement—Collision Coverage .................................................. 17
Insuring Agreement—Comprehensive Coverage ...................................... 18
Insuring Agreement—Additional Custom Parts or
   Equipment Coverage .................................................................................. 19
Insuring Agreement—Rental Reimbursement Coverage............................ 19
Insuring Agreement—Loan/Lease Payoff Coverage ................................. 19
Insuring Agreement—Pet Injury Coverage................................................20
Additional Definitions................................................................................20
Exclusions..................................................................................................21
Limits of Liability........................................................................................22
Payment of Loss........................................................................................24
No Benefit to Bailee ..................................................................................24
Loss Payable Clause..................................................................................24
Other Sources of Recovery........................................................................24
Appraisal ....................................................................................................25

**PART V—ROADSIDE ASSISTANCE COVERAGE**

Insuring Agreement.....................................................................................25
Additional Definitions..................................................................................25
Exclusions ..................................................................................................26
Unauthorized Service Provider...................................................................26
Other Insurance .........................................................................................26

**PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS**...........................27

**PART VII—GENERAL PROVISIONS**

Policy Period and Territory...........................................................................27
Changes.......................................................................................................27
Duty to Report Changes ............................................................................29
Settlement of Claims..................................................................................29
Terms of Policy Conformed to Statutes .....................................................29
Transfer of Interest .....................................................................................29
Fraud or Misrepresentation .......................................................................29
Payment of Premium and Fees .................................................................30
Cancellation ...............................................................................................30
Cancellation Refund...................................................................................31
Nonrenewal ................................................................................................31
Automatic Termination................................................................................32
Legal Action Against Us..............................................................................32
Our Rights to Recover Payment.................................................................33
Joint and Individual Interests......................................................................34
Bankruptcy .................................................................................................34

## CALIFORNIA AUTO POLICY

## LIMITS OF FUTURE COVERAGE

**PLEASE REFER TO THE "GENERAL PROVISIONS" SECTION OF THIS POLICY AND READ THE FOLLOWING PROVISIONS CAREFULLY. THEY MAY AFFECT YOUR COVERAGE IN THE FUTURE:**

### CHANGES
### CANCELLATION
### NONRENEWAL

## INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page. Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

## GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in bold-face type and have the same meaning whether in the singular, plural, or any other form.

1. "**Additional auto**" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** expressly identified on the **declarations page** if:
   a. **we** insure all other **autos you** own;
   b. the **additional auto** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
   d. **you** pay any additional premium due.

   An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2. "**Auto**" means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

   However, "**auto**" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

3. "**Auto business**" means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.

4. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

5. "**Covered auto**" means:
   a. an **auto** or **trailer** expressly identified by make, model and vehicle identification number on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
   b. any **additional auto**;
   c. any **replacement auto**; or
   d. a **trailer** owned by **you**.

6. "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.

7. "**Occupying**" means in, on, entering or exiting.

8. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
   a. listed in the "Drivers and household residents" section on the **declarations page**; and
   b. not designated as either an "Excluded" or a "List Only" driver.

9. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

10. "**Replacement auto**" means an **auto** that permanently replaces an **auto** expressly identified on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

11. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
    a. for commercial purposes;
    b. as an office, store, or for display purposes; or
    c. as a passenger conveyance.

12. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

13. "**You**" and "**your**" mean:
    a. a person shown as a named insured on the **declarations page**;
    b. the spouse of a named insured if residing in the same household at the time of the loss; and
    c. the registered domestic partner of a named insured if residing in the same household at the time of the loss.

2

## INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I. If, however, in the defense of any claim, an **insured person** is entitled by law to independent counsel, and has not waived that right in writing, **we** will provide such counsel. Independent counsel may, however, be chosen by the **insured person** provided that such counsel has the following minimum qualifications:

1. at least five years of experience in civil litigation, including substantial defense experience in the subject at issue in the action; and
2. errors and omissions coverage.

**We** are not obligated to pay the fees of such counsel until the **insured person** provides **us** with reasonable written proof that the counsel chosen possesses these minimum qualifications. In no event are **we** obligated to pay fees in excess of the rate actually paid by **us** to an attorney in the ordinary course of business in the defense of a similar action in the community in which the claim arose or is being defended.

**We** will also pay for replacement of a child passenger restraint system meeting applicable federal motor vehicle safety standards that was damaged in, or being used by a child at the time of, an accident for which liability coverage under **your** policy is applicable due to the liability of an **insured person**.

## ADDITIONAL DEFINITIONS

When used in this Part I:

1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
   b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
   d. any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.
2. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

3

**ADDITIONAL PAYMENTS**

In addition to **our** limit of liability, **we** will pay for an **insured person**:

1. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;
3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4. up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and
5. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while being used:
    a. to carry persons or property for compensation or a fee; or
    b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.

    This exclusion does not apply to shared-expense car pools;
2. any liability assumed under any contract by that **insured person**;
3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;
4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;
5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
    a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
    b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;
7. **bodily injury** or **property damage** for which insurance:
    a. is afforded under a nuclear energy liability insurance contract; or

4

b.   would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

8.   **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected;

9.   **property damage** to any property owned by, rented to, being transported by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;

10.  **bodily injury** to **you** or a **relative**;

11.  **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

12.  **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;

13.  **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

14.  punitive or exemplary damages;

15.  **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or

16.  **bodily injury** or **property damage** arising out of the use of a **covered auto** while used in connection with a personal vehicle sharing program or other similar program which engages in the business of facilitating the sharing of private passenger motor vehicles.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:

1.   claims made;
2.   **covered autos**;
3.   **insured persons**;
4.   lawsuits brought;
5.   vehicles involved in the accident; or
6.   premiums paid.

If **your declarations page** shows a split limit:

1.   the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;

5

2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and

3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

Except as otherwise provided by law, the "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I will be reduced by any payment to that person under Part III(A)—Uninsured/Underinsured Motorist Bodily Injury Coverage.

**We** will not pay under this Part I any expenses paid or payable under Part II—Medical Payments Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

## FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

## OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond.

6

**OUT-OF-STATE COVERAGE**

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory or possession has:

1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the limits of liability under this policy.

## PART II—MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:

1. sustained by an **insured person**; and
2. caused by that **motor vehicle** accident.

**We**, or someone on **our** behalf, will determine:

1. whether the expenses for **medical services** are reasonable; and
2. whether the **medical services** are necessary.

### ADDITIONAL DEFINITIONS

When used in this Part II:

1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident**:
      (i) while **occupying** an **auto**; or
      (ii) when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle; and
   b. any other person while **occupying** a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**.
2. "**Medical services**" means medical, surgical, dental, x-ray, ambulance, hospital, professional nursing, and funeral services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, orthopedics, and prosthetic devices.
3. "**Motor vehicle**" means a land motor vehicle designed for use principally on public roads.

7

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

Coverage under this Part II will not apply to **bodily injury**:

1. sustained by any person while **occupying** a **covered auto** while it is being used:
   a. to carry persons or property for compensation or a fee; or
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.

   This exclusion does not apply to shared-expense car pools;

2. arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;

3. to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

4. due to a nuclear reaction or radiation;

5. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

6. for which the United States Government is liable under the Federal Tort Claims Act;

7. sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;

8. if workers' compensation benefits are available for the **bodily injury**;

9. sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

10. sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **you**;

11. to **you**, a **relative**, or a **rated resident,** while **occupying** any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

12. to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

14. caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal or release of radioactive, nuclear, pathogenic or poisonous biological material; or
    b. any intentional discharge, dispersal or release of chemical or hazardous material for any purpose other than its safe and useful purpose;
15. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or
16. to any person who sustains **bodily injury** arising out of the use of a **covered auto** while used in connection with a personal vehicle sharing program or other similar program which engages in the business of facilitating the sharing of private passenger motor vehicles.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured person** under this Part II will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or Part III(A)—Uninsured/Underinsured Motorist Bodily Injury Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured person** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

9

The **insured person** may not sue **us** for expenses for **medical services we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed amount to the medical service provider or the medical service provider has initiated collection activity against the **insured person** for the unreasonable or unnecessary expenses.

### OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying** a vehicle or trailer, other than a **covered auto**, will be excess over any other **auto** insurance providing payments for **medical services**.

### PART III(A)—UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle** or **underinsured motor vehicle**.

**We** will pay for damages an **insured person** is entitled to recover from the owner or operator of an **underinsured motor vehicle** only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

### ADDITIONAL DEFINITIONS

When used in this Part III(A):
1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident**;
   b. any person **occupying** a **covered auto**;
   c. any person **occupying** a non-owned **auto** while it is being operated by **you**; and
   d. any person who is entitled to recover damages covered by this Part III(A) because of **bodily injury** sustained by a person described in a., b. or c. above.
2. "**Underinsured motor vehicle**" means a land motor vehicle or trailer to which a

10

bodily injury liability bond, policy, cash deposit, or self-insurance certificate applies at the time of the accident, but the sum of all such bonds, policies, deposits or self-insurance is less than the coverage limit for Uninsured/Underinsured Motorist Coverage shown on the **declarations page**.

An "**underinsured motor vehicle**" does not include any vehicle or equipment:

a. owned by **you**, a **relative**, or a **rated resident**. However, this does not apply if a vehicle owned by **you**, a **relative**, or a **rated resident** causes **bodily injury** to an **insured person** while being operated, or caused to be operated, by a person without the consent of the injured **insured person** and in connection with criminal activity, if that criminal activity is documented in a police report and the injured **insured person** is not a party to the criminal activity;

b. owned by any governmental unit or agency;

c. designed mainly for use off public roads, while not on public roads;

d. while used as a residence or premises; or

e. expressly identified by make, model and serial number on the **declarations page** of this policy;

3. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:

a. to which no bodily injury liability bond or policy applies at the time of the accident;

b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
   (i) denies coverage;
   (ii) refuses to admit coverage except conditionally or under a reservation of rights; or
   (iii) is insolvent, or becomes so within one year of the accident;

c. that is a hit-and-run vehicle whose owner or operator cannot be identified and which causes **bodily injury** by striking:
   (i) **you**, a **relative**, or a **rated resident**; or
   (ii) a vehicle that an **insured person** is **occupying**;

   provided that the **insured person**, or someone on his or her behalf:
   (i) reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident; and
   (ii) provides **us**, within 30 days of the accident, a statement under oath that the **insured person**, or his or her legal representative, has a cause of action against the owner or operator of a vehicle who cannot be identified. The statement must set forth facts supporting the claim; or

d. that is used without the permission of the owner thereof if there is no bodily injury liability insurance or bond applicable at the time of the accident with respect to the owner or operator thereof.

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

a. owned or operated by **you**, a **relative**, or a **rated resident**. However, this does not apply if a vehicle owned by **you**, a **relative**, or a **rated resident** causes **bodily injury** to an **insured person** while being operated, or caused to be operated, by a person without the consent of the injured **insured person** and in connection with criminal activity, if that criminal activity is documented in a police report and the injured **insured person** is not a party to the criminal activity;

11

   b.   owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that is or becomes insolvent;
   c.   owned by any governmental unit or agency;
   d.   designed mainly for use off public roads, while not on public roads;
   e.   while located for use as a residence or premises; or
   f.   that is a **covered auto** expressly identified by make, model and serial number on the **declarations page** of this policy.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III(A).

Coverage under this Part III(A) will not apply:

1.   to **bodily injury** sustained by any person while using or **occupying**:
   a.   any **auto** while being used:
      (i)   to carry persons or property for compensation or a fee; or
      (ii)  for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.
      This exclusion does not apply to shared-expense car pools; or
   b.   a motor vehicle that is owned by **you**, a **relative**, or a **rated resident**. This exclusion does not apply to a **covered auto** that is insured under this Part III(A);
2.   to **bodily injury** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
3.   directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a.   workers' compensation law; or
   b.   disability benefits law;
4.   to any punitive or exemplary damages;
5.   to **bodily injury** sustained by any person and caused by an **uninsured motor vehicle** if that person or the legal representative of that person settles without **our** written consent;
6.   to **bodily injury** sustained by any person while using or **occupying** a motor vehicle operated by a person excluded from coverage under this policy under a Named Driver Exclusion Election;
7.   to **bodily injury** sustained by any person while **occupying** a motor vehicle, other than a **covered auto**, if the owner has insurance similar to that provided under this Part III(A); or
8.   to **bodily injury** arising out of the use of a **covered auto** while used in connection with a personal vehicle sharing program or other similar program which engages in the business of facilitating the sharing of private passenger motor vehicles.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Uninsured/Underinsured Motorist Coverage is the most **we** will pay regardless of the number of:
1.   claims made;

2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

The limits of liability under this Part III(A) will be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;
2. paid under Part I—Liability To Others; and
3. paid, and the present value of all amounts payable, because of **bodily injury** under any workers' compensation law.

The damages an **insured person** is entitled to recover under this Part III(A) shall be reduced by all sums paid or payable under any valid and collectible automobile medical payments insurance available to the **insured person** including, but not limited to, all sums paid or payable under this policy's Part II—Medical Payments Coverage.

No one will be entitled to duplicate payments for the same elements of damages.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured motorist coverage, the damages an **insured person** is entitled to recover under this Part III(A) shall be deemed not to exceed the highest limit of any applicable coverage. **We** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all

13

available coverage limits. However, any insurance **we** provide with respect to a vehicle that is not a **covered auto** will be excess over any other uninsured or underinsured motorist coverage.

## ARBITRATION

If **we** and an **insured person** cannot agree on:
1. the legal liability of the operator or owner of an **uninsured motor vehicle** or **underinsured motor vehicle**; or
2. the amount of the damages sustained by the **insured person**;

this will be determined by arbitration. If the accident involves an **uninsured motor vehicle**, any demand for arbitration must be made within two years of the date of the accident. If the accident involves an **underinsured motor vehicle**, the demand must be made after all applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements and prior to the expiration of the bodily injury statute of limitations in the state in which the accident occurred. An **insured person** demanding arbitration must send written notice to **us**, or **our** agent for process, by certified mail, return receipt requested.

In the event of arbitration, arbitration shall be conducted by a single neutral arbitrator. The costs and fees of the arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** resides. Local rules of procedure and evidence will apply.

A decision by the arbitrator will be binding with respect to a determination of:
1. the legal liability of the operator or owner of an **uninsured motor vehicle** or **underinsured motor vehicle**; and
2. the amount of the damages sustained by the **insured person**.

The arbitrator will have no authority to award an amount in excess of the limit of liability.

## PART III(B)—UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE

### INSURING AGREEMENT—UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for **property damage** caused by the owner or operator of an **uninsured motor vehicle** that:
1. is caused by an accident; and
2. arises out of the ownership, maintenance or use of an **uninsured motor vehicle**.

### INSURING AGREEMENT—UNINSURED MOTORIST COLLISION DEDUCTIBLE WAIVER COVERAGE

If **you** pay both the premium for this coverage and the premium for Collision Coverage under Part IV—Damage To A Vehicle for the same **covered auto**, **we** will pay your Collision Coverage deductible for that **covered auto** if involved in an accident that:
1. is caused by the owner or operator of an **uninsured motor vehicle**; and

14

2.   arises out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

**We** will pay for replacement of a child passenger restraint system meeting applicable federal motor vehicle safety standards that was damaged in, or being used by a child in a **covered auto** at the time of, an accident for which Uninsured Motorist Property Damage Coverage applies due to the liability of the owner or operator of an **uninsured motor vehicle**.

The owner or operator of the **uninsured motor vehicle** must be identified or the **uninsured motor vehicle** must be identified by its license number. **You**, or someone on **your** behalf, must notify **us**, or one of **our** agents or brokers, of any accident resulting in **property damage** within 10 business days from the date of the accident.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## ADDITIONAL DEFINITIONS

When used in this Part III(B):
1.   "**Property damage**" means physical damage to, or destruction of, a **covered auto** caused by actual, direct physical contact with an **uninsured motor vehicle**. It does not include loss of use of the **covered auto**.
2.   "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:
     a.   to which no **property damage** liability bond or policy applies at the time of the accident;
     b.   to which a **property damage** liability bond or policy applies at the time of the accident, but the bonding or insuring company:
          (i)   denies coverage;
          (ii)  refuses to admit coverage except conditionally or under a reservation of rights; or
          (iii) is insolvent, or becomes so within one year of the accident; or
     c.   that is used without the owner's permission if there is no property damage liability insurance or bond applicable at the time of the accident with respect to the owner or operator of the vehicle.

An "**uninsured motor vehicle**" does not include any vehicle or equipment:
     a.   owned or operated by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**;
     b.   owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that is or becomes insolvent;
     c.   owned by any governmental unit or agency;
     d.   operated on rails or crawler treads;
     e.   designed mainly for use off public roads, while not on public roads;
     f.   while located for use as a residence or premises;
     g.   expressly identified by make, model and serial number on the **declarations page** of this policy; or

15

h.  that has at least the minimum property damage liability limits required by Vehicle Code § 16056, even if the property damage liability limits are not sufficient to compensate for all property damage caused by the owner or operator of the vehicle.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III(B).

Coverage under this Part III(B) will not apply:

1.  to any punitive or exemplary damages;
2.  to **property damage** to a motor vehicle operated by a person excluded from coverage under this policy under a Named Driver Exclusion Election;
3.  to **property damage** to a **trailer**;
4.  to **property damage** if there is no actual, direct physical contact between the **uninsured motor vehicle** and the **covered auto**;
5.  to **property damage** unless the owner or operator of the **uninsured motor vehicle**, or the license plate number of the **uninsured motor vehicle**, can be identified; or
6.  to **property damage** arising out of the use of a **covered auto** while used in connection with a personal vehicle sharing program or other similar program which engages in the business of facilitating the sharing of private passenger motor vehicles.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Uninsured Motorist Property Damage Coverage is the most **we** will pay regardless of the number of:

1.  claims made;
2.  **covered autos**;
3.  lawsuits brought;
4.  vehicles involved in the accident; or
5.  premiums paid.

The amount shown on the **declarations page** for "property damage" is the most **we** will pay for the aggregate of all **property damage** caused by any one accident.

**Our** Limit of Liability under this Part III(B) for **property damage** to a **covered auto** arising out of one accident is the lowest of:

1.  the actual cash value of the **covered auto** at the time of the accident;
2.  the amount necessary to replace the **covered auto**;
3.  the amount necessary to repair the **covered auto** to its pre-loss condition;
4.  any Limit of Liability shown on the **declarations page** for "property damage" under this Part III(B); or
5.  the amount of the deductible for Collision Coverage shown on the **declarations page**. This subpart only applies if **you** have paid the premium for Collision Coverage under Part IV—Damage To A Vehicle.

16

**Our** Limit of Liability for Uninsured Motorist Collision Deductible Waiver Coverage under this Part III(B) for **property damage** to a **covered auto** arising out of any one accident is the lower of:

1. the amount of the loss; or
2. the amount of the Collision Coverage deductible shown on the **declarations page** for the **covered auto** that is involved in the accident.

Payments for **property damage** under this Part III(B) are subject to an adjustment for depreciation and physical condition; such adjustment will be made in determining the Limit of Liability at the time of the accident.

No one will be entitled to duplicate payments for the same elements of damages.

## OTHER INSURANCE

If there is other applicable uninsured motorist property damage coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits.

## ARBITRATION

If **we** and an **insured person** cannot agree on:

1. the legal liability of the operator or owner of an **uninsured motor vehicle**; or
2. the amount of the **property damage** sustained by the **insured person**;

this will be determined by arbitration. Any demand for arbitration must be made within one year from the date of the accident.

In the event of arbitration, arbitration shall be conducted by a single neutral arbitrator. The costs and fees of the arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the insured person resides. Local rules of procedure and evidence will apply.

A decision by the arbitrator will be binding with respect to a determination of:

1. the legal liability of the operator or owner of an **uninsured motor vehicle**; and
2. the amount of the **property damage** sustained by the **insured person**.

The arbitrator will have no authority to award an amount in excess of the limit of liability.

## PART IV—DAMAGE TO A VEHICLE

## INSURING AGREEMENT—COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, resulting from **collision**.

17

In addition, this coverage will pay for replacement of a child passenger restraint system meeting applicable federal motor vehicle safety standards that was damaged in, or being used by a child in a **covered auto** or **non-owned auto** at the time of, a **collision** to which this coverage applies.

## INSURING AGREEMENT—COMPREHENSIVE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:

1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**.

In addition, this coverage will pay for replacement of a child passenger restraint system meeting applicable federal motor vehicle safety standards that was damaged in, or being used by a child at the time of, a sudden, direct and accidental loss to a **covered auto** or **non-owned auto** that is not caused by **collision** and to which loss this coverage applies.

Also, **we** will pay for:

1. reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and
2. loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.

A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:

1. when the **auto** has been recovered and returned to **you** or its owner;
2. when the **auto** has been recovered and repaired;
3. when the **auto** has been replaced; or
4. 72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

18

**INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS
OR EQUIPMENT COVERAGE**

**We** will pay for sudden, direct and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

### INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:
1.   when the **covered auto** cannot be driven due to a loss; or
2.   if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;
and ending the earliest of:
1.   when the **covered auto** has been returned to **you**;
2.   when the **covered auto** has been repaired;
3.   when the **covered auto** has been replaced;
4.   72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5.   when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

### INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:
1.   the actual cash value of the **covered auto** at the time of the total loss; and

2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:

   a. unpaid finance charges or refunds due to the owner for such charges;

   b. excess mileage charges or charges for wear and tear;

   c. charges for extended warranties or refunds due to the owner for extended warranties;

   d. charges for credit insurance or refunds due to the owner for credit insurance;

   e. past due payments and charges for past due payments; and

   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

## INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:

1. up to $1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or

2. a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

## ADDITIONAL DEFINITIONS

When used in this Part IV:

1. "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.

2. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:

   a. are permanently installed or attached; and

   b. alter the appearance or performance of the **auto**.

3. "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as

a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.

4. "**Non-owned auto**" means an **auto** that is not owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.

5. "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:
1. to any vehicle while being used:
   a. to carry persons or property for compensation or a fee; or
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.

   This exclusion does not apply to shared-expense car pools;
2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;
3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or race-course;
4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected;
6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;
7. due to destruction or confiscation by governmental or civil authorities of any vehicle because **you**, any **relative**, or any **rated resident** engaged in illegal activities;
8. to any vehicle that is due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical, electrical or electronic breakdown or failure; or
   d. road damage to tires.

   This exclusion does not apply if the damage results from the theft of a vehicle;
9. to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
   b. any case or other container designed for use in storing or carrying tapes, com-pact discs, cassettes, DVDs, or other recording or recorded media;

21

    c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and

    d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10. to any vehicle for diminution of value;

11. to any vehicle caused directly or indirectly by:

    a. war (declared or undeclared) or civil war;

    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or

    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

12. to any vehicle caused directly or indirectly by:

    a. any accidental or intentional discharge, dispersal or release of radioactive, nuclear, pathogenic or poisonous biological material; or

    b. any intentional discharge, dispersal or release of chemical or hazardous material for any purpose other than its safe and useful purpose;

13. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations; or

14. to a **covered auto** while used in connection with a personal vehicle sharing program or other similar program which engages in the business of facilitating the sharing of private passenger motor vehicles.

## LIMITS OF LIABILITY

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:

    a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;

    b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

    c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or

    d. the Stated Amount shown on the **declarations page** for that **covered auto**.

    However, the most **we** will pay for loss to:

    a. **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased.

    b. a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is $500.

2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:

    a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.

b.  If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.

c.  Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.

d.  In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:

    (i)  will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

    (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:

        (a)  original manufacturer parts or equipment; and

        (b)  nonoriginal manufacturer parts or equipment.

e.  To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

f.  To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:

    (i)  batteries;

    (ii) tires;

    (iii) engines and transmissions, if the engine has greater than 80,000 miles; and

    (iv) any other **mechanical parts** that are nonfunctioning or inoperative.

**We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

g.  The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

h.  Any amount paid or payable to a person under this Part IV shall be reduced by any amount paid for **property damage** under Part III(B)—Uninsured Motorist Property Damage Coverage.

3.  No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4.  Duplicate recovery for the same elements of damages is not permitted.

5.  The following additional limits of liability apply to Pet Injury coverage:

a.  The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

23

b.  If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.
c.  No deductible shall apply to this coverage.

## PAYMENT OF LOSS

**We** may, at **our** option:
1.  pay for the loss in money; or
2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

The lienholder's interest will not be protected:
1.  where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2.  where the loss is otherwise not covered under the terms of this policy.
If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:
1.  any coverage provided by the owner of the **non-owned auto** or **trailer**;

24

2. any other applicable physical damage insurance; and
3. any other source of recovery applicable to the loss.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V—ROADSIDE ASSISTANCE COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:
1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

### ADDITIONAL DEFINITIONS

When used in this Part V:
1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water or sand within 100 feet of a road or highway.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.**

Coverage under this Part V will not apply to:

1. more than three **covered emergencies** for any single **covered auto** in a six-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products or material not related to the disablement;
4. labor not related to the disablement;
5. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7. assistance with jacks, levelers, airbags or awnings;
8. labor or repair work performed at a service station, garage, or repair shop;
9. auto storage charges;
10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
11. mounting or removing of snow tires or chains;
12. tire repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of a **covered disabled auto**;
14. a trailer; or
15. a **covered auto** while used in connection with a personal vehicle sharing program or other similar program which engages in the business of facilitating the sharing of private passenger motor vehicles.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement;

which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9. authorize **us** to obtain medical and other records.

## PART VII—GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by

27

**us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly. Changes that may result in a premium increase or decrease are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:

1. the number, type or use classification of **covered autos**. Commercial use is prohibited except to the extent allowed by rules **we** have filed with the California Department of Insurance;
2. the persons who regularly operate a **covered auto**;
3. the persons of legal driving age residing in **your** household;
4. the residents in **your** household;
5. an operator's marital status;
6. **your** mailing address and **your** residence address;
7. the principal garaging address of any **covered auto**;
8. coverage, deductibles, or limits of liability; or
9. rating territory or discount eligibility.

In addition, **we** may increase the premium for this policy based on:

1. accident involvement by an insured person, and whether the insured person is at fault in the accident;
2. convictions for violating any provision of the Vehicle Code or the Penal Code relating to the operation of a motor vehicle;
3. the payment **we** make due to a claim filed on this policy; or
4. any other reason not otherwise specified in this Changes provision that is both lawful and not unfairly discriminatory.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

If there is unearned premium generated by an amendment or endorsement removing or reducing coverage for an insured person or property, it will first be applied to any balance owed on the policy as a whole.

**DUTY TO REPORT CHANGES**

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. Further, **you** must report to **us** certain changes no later than 30 days after the change occurs. These are changes to:

1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered auto**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered auto**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident.**

**Your** failure to comply with this duty, where material to the risk of loss, may result in **our** denial of coverage for a claim.

### SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

### TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

### TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

### FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:

1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or

29

3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered. However, if **we** make a payment, the insured person must reimburse **us**.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:

1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. conceal or misrepresent any material fact or circumstance; or
3. engage in fraudulent conduct;

in connection with a requested change **we** may void the policy or reform it as it existed immediately prior to the requested change. **W**e may do this at any time, including after the occurrence of an accident or loss. However, if **we** make a payment, the insured person must reimburse **us**.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date **you** wish the cancellation to be effective.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if the policy is cancelled for nonpayment of premium.

**We** will give at least 20 days notice of cancellation in all other cases.

**We** may cancel only for one or more of the following reasons:
1. nonpayment of premium;
2. fraud or material misrepresentation affecting the policy or an insured; or
3. a substantial increase in the hazard insured against.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is cancelled, any refund due will be computed on a daily pro rata basis. However, **we** will retain a cancellation fee if this policy is cancelled at **your** request or if cancellation is for nonpayment of premium.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 30 days before the end of the policy period. If **we** fail to mail or deliver an offer of renewal or a notice of nonrenewal to **you**, **your** policy will remain in effect for 30 days from the date that either the offer to renew or the notice of nonrenewal is subsequently mailed or delivered to **you**.

**We** may nonrenew for one or more of the following reasons:
1. nonpayment of premium;
2. fraud or material misrepresentation affecting the policy or an insured; or
3. a substantial increase in the hazard insured against.

**AUTOMATIC TERMINATION**

**1. Coverage under this policy will terminate automatically if you do not accept our renewal offer.**

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

**2. Coverage under this policy will terminate automatically when you obtain other insurance on a covered auto.**

If **you** obtain other insurance on a **covered auto**, any similar insurance displayed on the **declarations page** of this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

**LEGAL ACTION AGAINST US**

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

**We** may not be sued for payment under Part III(A)—Uninsured/Underinsured Motorist Bodily Injury Coverage or Part III(B)—Uninsured Motorist Property Damage Coverage unless within two years from the date of the accident an insured person or his or her legal representative has:
1. filed suit for **bodily injury** against the uninsured motorist in a court of competent jurisdiction and notice of such suit has been given to **us**;
2. reached an agreement with **us** as to the amount due under this coverage; or
3. formally instituted arbitration proceedings by notifying **us** in writing via certified mail, return receipt requested.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

**OUR RIGHTS TO RECOVER PAYMENT**

**We** are entitled to payment, reimbursement and subrogation as provided in this section regardless of whether the total amount of the recovery of the insured person on account of the injury is less than the actual loss suffered by the insured person. Such rights of recovery apply to the extent of **our** payment. The insured person assigns and transfers to **us** all rights, claims, demands and interest which that insured person may have against any party through the occurrence of a loss and authorizes us to sue, compromise or settle in the insured person's name all such claims and to execute and sign releases and acquittances in the insured person's name. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights. However, this paragraph does not apply to a payment made under Part III(A)—Uninsured/Underinsured Motorist Bodily Injury Coverage for damages that an insured person is entitled to recover from the owner or operator of an underinsured motor vehicle.

Subject to the terms of the preceding paragraph, when an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

If an insured person recovers from another, other than the owner or operator of an underinsured motor vehicle, without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

**JOINT AND INDIVIDUAL INTERESTS**

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy. If execution of a judgment against an insured person is returned unsatisfied because of the bankruptcy or insolvency of an insured person, a person claiming damages under Part I—Liability To Others may maintain an action against **us** for the amount of the judgment, subject to the terms and conditions of this policy and not exceeding **our** Limits of Liability under Part I.