1
2
3
4

KLECZEK LAW OFFICE
David A. Kleczek (SBN 244045)
825 Washington Street, Suite 301
Oakland, CA 94607
Telephone:  (510) 663-7100
Facsimile:   (510) 663-7102
david.Kleczek@kleczeklaw.com

5
6
7
8

LAW OFFICES OF H. PAUL BRYANT
H. Paul Bryant (SBN 126037)
825 Washington Street, Suite 303
Oakland, CA 94607
Telephone:  (510) 272-0700
Facsimile:   (510) 272-0776
hpaulbryantlaw@gmail.com

9

Attorneys for Plaintiff Bobby Jones
And the Proposed Class

10

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISCTRICT OF CALIFORNIA

13

14
15
16
17
18
19
20
21
22
23
24
25
26

BOBBY JONES, individually, and on behalf
of all others similarly situated,

               Plaintiffs,

v.

PROGRESSIVE DIRECT INSURANCE
COMPANY, PROGRESSIVE SELECT
INSURANCE COMPANY, PROGRESSIVE
CORPORATION, PROGRESSIVE
CASUALTY INSURANCE COMPANY, and
MITCHELL INTERNATIONAL, INC.; and
DOES 3 through 50, inclusive,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 3:16-cv-06941 JD**

**CLASS ACTION**

**SECOND AMENDED COMPLAINT
FOR UNLAWFUL, UNFAIR AND
DECEPTIVE BUSINESS PRACTICES,
FRAUD, NEGLIGENT
MISREPRESENTATION, BREACH OF
CONTRACT, BREACH OF THE
IMPLIED COVENANT OF GOO FAITH
AND FAIR DEALING, DECLARATORY
RELIEF**

**DEMAND FOR JURY TRIAL**

27

28

SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs BOBBY JONES, individually and on behalf of all others similarly situated, hereby complain against Defendants PROGRESSIVE DIRECT INSURANCE COMPANY, PROGRESSIVE CORPORATION, and PROGRESSIVE SELECT INSURANCE COMPANY, (Hereinafter "PROGRESSIVE"), and MITCHELL INTERNATIONAL, INC. (Hereinafter "MITCHELL") and DOES 3 through 50 (generally referred to collectively herein as "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1. In 2010, property damage claims from automobile accidents amounted to $76 billion.[1]  A large portion of those property damage claims are made by consumers to their own automobile insurance company.  Where the damage to the vehicle exceeds the cost to repair, the vehicle is deemed a total loss, and the consumer is entitled to recover for the reasonable value of the vehicle just prior to the collision.  The consumer is paid by her insurer based on finding "comparable automobiles" and using those as the measuring stick to determine the value.

2. California's Insurance Code sets standards for evaluating and paying automobile total loss claims, and is set forth in 10 C.C.R. §2695.8.  For first party claims, the Insurer must follow a set of guidelines that helps it determine which vehicles are a "comparable automobile".  10 C.C.R. §2695.8(b)(2).  The "comparable automobiles" are used to make an offer to the insured for total loss property claims.

3. Since at least 2010, Progressive and Mitchell International Inc., have worked as partners for determining the value of total loss claims.  Progressive has outsourced its duty to find "comparable "automobiles" for valuation purposes to Mitchell International Inc.

4. To increase its profit margins, Progressive and Mitchell International Inc. have engaged in unlawful, unfair and deceptive business practices which facilitate and enable them present 'lowball' property damage offers to its insured where there is a total loss situation.  To wit, the Defendants failed to use lawful "comparable automobiles" as required by law for purposes of determining the total loss value.

---

[1] U.S. Department of Transportation, 2010.

5.      In their scheme to reduce the value of the "comparable automobiles", the Defendants employed methods contrary to the California Insurance Regulations, deceptive practices, and constituted outright deception.  Defendants used out of market "comparable vehicles".  Defendants failed to fairly adjust for differences between "comparable vehicles" and the total loss vehicles.  Defendants routinely used as "comparable vehicles" vehicles that had previously been deemed a total loss, without making any adjustments for the differences in the vehicles.

6.      Progressive at all relevant times had full knowledge that Mitchell International Inc. was engaging in a scheme to defraud insurers by undervaluing the "comparable automobiles".  All the "comparable vehicle" reports prepared by Mitchell International Inc. are disclosed to Progressive.  Thus, Progressive knew or should have known of this scheme to illegally deflate the "comparable vehicles".  Further, Progressive cannot contract away its obligations to operate lawfully to Mitchell to increase its profit margins.

## **PARTIES**

7.      Plaintiff Bobby Jones is an individual over 18 years of age.  He is, and at all relevant times was, a resident of Contra Costa County, California.

8.      Defendant Progressive Casualty Insurance Company is a group of insurance companies operating under the umbrella of The Progressive Corporation (Hereinafter the Progressive Companies or Progressive, collectively).  According to The Progressive Corporation's 2015 balance sheet, they earned $1,300,500,000.00 after taxes in net income primarily through the insurance business.

9.      Defendant Mitchell International Inc. is a third party provider which provides third party administrative services for claims administration.  Mitchell International Inc. is a Delaware Corporation doing business.  In this case Mitchell provided claims services for Progressive relating to the valuation of total loss vehicles in the State of California.

10.      Defendants DOES 3 through 50 are persons or entities whose true names and

SECOND AMENDED CLASS ACTION COMPLAINT

capacities are presently unknown to Plaintiff, who therefore sues them by such fictitious names. Plaintiff is informed and believes and on that basis, alleges that each of the fictitiously named defendants perpetrated some or all of the wrongful acts alleged herein, is responsible in some manner for the matters alleged herein, and is jointly and severally liable to Plaintiff.  Plaintiff will seek leave of court to amend this complaint to state the true names and capacities of such fictitiously named defendants when ascertained.

11.     At all times mentioned herein, each named defendant and each DOE defendant was the agent or employee of each of the other defendants and was acting within the course and scope of such agency or employment and/or with the knowledge, authority, ratification and consent of the other defendants.  Each defendant is jointly and severally liable to Plaintiff and to the members of the proposed class.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the putative plaintiff class are citizens of States different from Defendant.

13.     Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendants regularly transact and solicit business in this District.

14.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiffs' and the Defendants are citizens of different states.

15.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

16.     At all relevant times, Defendants, and each of them, engaged in various schemes to deflate the value of declared "total loss vehicles" (vehicles where an election is made to forego any vehicle repair) in order to pay first party insureds less than the actual pre-loss value of the

SECOND AMENDED CLASS ACTION COMPLAINT

total loss vehicle.

17.     Progressive and Mitchell each represented to its first party insureds, either directly or indirectly through their agents, that it was using "comparable vehicles" to determine the value of the total loss vehicle.  Instead, Progressive and Mitchell employed various schemes to select the 'vehicles' in a manner which allowed them to reduce the calculated value they paid for "total loss vehicles".  By affirmatively representing to the Insured that they were using comparable vehicles, when Progressive and Mitchell knew or should have known such representation was false, they and their agents misrepresented the essential facts to the first party insured that they were using 'comparable vehicles' in determining the value of the total loss vehicle.

18.     At all relevant times, Progressive and Mitchell had actual knowledge that the representations they made to Bobby Jones and other class members as herein alleged were false.  Progressive and Mitchell collected and used information about whether a comparable car was previously a total loss vehicle.  Progressive and Mitchell used this information when it was to their advantage; when the insured car was a prior total loss Progressive and Mitchell used this information to reduce the valuation of the insured's car.  However, when the comparable vehicle was being offered, Progressive and Mitchell suppressed the information and failed to properly adjust the value of the car.

19.     One scheme was for Progressive and Mitchell to use vehicles with salvage titles as a "comparable vehicle" without disclosing the fact that they were salvage vehicles, and without making any adjustment for the fact that it used a salvage vehicle as a comparable.

20.     In a second scheme, Progressive and Mitchell failed to properly seek, use and report Dealer quotes as required by law.  Where no 'comparable vehicles' are available to determine the value of the total loss vehicle, insurers are entitled to use "the average of two or more quotations from two or more licensed dealers in the local market area;". 10 C.C.R. 2596.8(b)(3)(B).  Progressive and Mitchell had a practice to not contact licensed dealers to obtain a quote.  The Defendants fabricated contacts with dealers as well as deflated the quote obtained by the dealers.  The failure to properly use Dealer quotes allowed them to reduce the calculated

5

value they paid for "total loss vehicles".

21.     In a third scheme, Progressive and Mitchell had a policy of ignoring "comparable vehicles" from licensed dealers that it deemed to be priced too high.  Progressive and Mitchell International Inc. would instead use non-compliant "comparable vehicles" whose representation as a "comparable vehicle" was were either fabricated, a deflated value vehicle, a preciously used total loss vehicles (i.e., salvage vehicle), or through some other misrepresentation concerning the "comparable vehicles".

22.     In a Fourth scheme, Progressive and Mitchell had a policy of ignoring the Insured's purchase price for the vehicle; even when the purchase was made during the time frame in which other supposedly "comparable vehicles" were considered.

23.     10 C.C.R. 2695.8(b) addresses the claims handling procedures and requirements for determining the total loss value, and states as follows:

> (b) In adjusting and settling first party automobile **TOTAL LOSS** claims the following standards shall apply:(1) The insurer may elect a cash settlement that shall be based upon the actual cost of a "comparable automobile" less any **DEDUCTIBLE** provided in the policy. This cash settlement amount shall include all applicable taxes and one-time fees incident to transfer of evidence of ownership of a comparable automobile. This amount shall also include the license fee and other annual fees to be computed based upon the remaining term of the loss vehicle's current registration. This procedure shall apply whether or not a replacement automobile is purchased.
> (A) If the insured chooses to retain the loss vehicle, the cash settlement amount shall include the sales tax associated with the cost of a comparable automobile, discounted by the amount of sales tax attributed to the salvage value of the loss vehicle. The cash settlement amount shall also include all fees incident to transfer of the claimant's vehicle to salvage status. The **SALVAGE VALUE** may be deducted from the settlement amount and shall be determined by the amount for which a **SALVAGE** pool or a licensed salvage dealer, wholesale motor vehicle auction or dismantler will purchase the salvage. If requested by the claimant, the insurer shall provide the name, address and telephone number of the salvage dealer, salvage pool, motor vehicle auction or dismantler who will purchase the salvage. The insurer shall disclose in writing to the claimant that notice of the salvage retention by the claimant must be provided to the Department of Motor Vehicles and that this notice may affect the loss vehicle's future resale and/or insured value. The disclosure must also inform the claimant of his or her right to seek a refund of the unused license fees from the Department of Motor Vehicles.

SECOND AMENDED CLASS ACTION COMPLAINT

(2) A "comparable automobile" is one of **LIKE KIND AND QUALITY**, made by the same manufacturer, of the same or newer model year, of the same model type, of a similar body type, with options and mileage similar to the insured vehicle. Newer model year automobiles may not be used as comparable automobiles unless there are not sufficient comparable automobiles of the same model year to make a determination as set forth in Section 2695.8(b)(3), below. Any differences between the comparable automobile and the insured vehicle shall be permitted only if the insurer fairly adjusts for such differences. Any adjustments from the cost of a comparable automobile must be discernible, measurable, itemized, and specified as well as appropriate in dollar amount and so documented in the claim file. Deductions taken from the cost of a comparable automobile that cannot be supported shall not be used. The actual cost of a comparable automobile shall not include any deduction for the condition of a loss vehicle unless the documented condition of the loss vehicle is below average for that particular year, make and model of vehicle. This subsection shall not preclude deduction for prior and/or unrelated damage to the loss vehicle. A comparable automobile must have been available for retail purchase by the general public in the local market area within ninety (90) calendar days of the final settlement offer. The comparable automobiles used to calculate the cost shall be identified by the vehicle identification number (VIN), the stock or order number of the vehicle from a licensed dealer, or the license plate number of that comparable vehicle if this information is available. The identification shall also include the telephone number (including area code) or street address of the seller of the comparable automobile.

(3) The insurer shall take reasonable steps to verify that the determination of the cost of a comparable vehicle is accurate and representative of the market value of a comparable automobile in the local market area. Upon its request, the department shall have access to all records, data, computer programs, or any other information used by the insurer or any other source to determine market value. The cost of a comparable automobile shall be determined as follows and, once determined, shall be fully itemized and explained in writing for the claimant at the time the settlement offer is made:

(A) when comparable automobiles are available or were available in the local market area in the last 90 days, the average cost of two or more such comparable automobiles; or,

(B) when comparable automobiles are not available or were not available in the local market area in the last 90 days, the average of two or more quotations from two or more licensed dealers in the local market area; or,

(C) the cost of a comparable automobile as determined by a computerized automobile valuation service that produces statistically valid fair market values within the local market area; or

(D) if it is not possible to determine the cost of a comparable automobile by using one of the methods described in subsections (b)(3)(A), (b)(3)(B) and

7

(b)(3)(C) of this section, the cost of a comparable automobile shall otherwise be supported by documentation and fully explained to the claimant. Any adjustments to the cost of a comparable automobile shall be discernible, measurable, itemized, and specified as well as appropriate in dollar amount and so documented in the claims file. Deductions taken from the cost of a comparable automobile that cannot be supported shall not be used

(4) In first party automobile total loss claims, the insurer may elect to offer a replacement automobile which is a specified comparable automobile available to the insured with all applicable taxes, license fees and other fees incident to transfer of evidence of ownership of the automobile paid by the insurer at no cost other than any deductible provided in the policy. The offer and any rejection thereof must be documented in the insurer's claim file. A replacement automobile must be in as good or better overall condition than the insured vehicle and available for inspection within a reasonable distance of the insured's residence.

## **Plaintiff Bobby Jones**

24.     On October 21, 2015, Bobby Jones purchased a 1999 Chevrolet Venture for a list price of $3,250.00, before tax, title and license.

25.     On November 18, 2015, Mr. Jones' 1999 Chevrolet Venture was involved in a serious automobile accident.  As is common in in incidents resulting in total loss vehicle claims, Mrs. Jones was admitted to the hospital for injuries relating to the crash.  Mr. Jones was without a car, his wife was hospitalized.  Time was of the essence for Mr. Jones in that it was necessary to resolve the claim with Progressive quickly so that he could focus on resolving issues common to those that incur a total loss vehicle, such as obtaining a new vehicle, dealing with injuries to you and those in your vehicle, and making up for time lost from work.

26.     At all relevant times the insurance policy attached as Exhibit A had the following relevant clauses in effect:

- "If you pay the premium for this coverage, we will pay for sudden, direct and accidental loss to a:
    - i.   Covered auto, including an attached trailer;
    - ii.  Non-owned auto;

And its custom parts or equipment, resulting from collision."

- "The limit of liability for loss to a covered auto, non-owned auto, or custom

8

parts or equipment is the lowest of:

    i.   The actual cash value of the stolen or damages property at the time of the loss reduced by the applicable deductible;

    ii.   The amount necessary to replace the stolen or damages property reduced by the applicable deductible;

    iii.   The amount necessary to repair the damages property to its pre-loss condition reduced by the applicable deductible; or

    iv.   The State Amount shown on the declarations page for that covered auto."

- "To determine the amount necessary to repair or replace the damages property as referred to in subsection 1, the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage included broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint.  The reduction for unrepaired prior damage is the cost of labor parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damage in the loss."

- "To determine the amount necessary to repair or replace the damages property as referred to in subsection 1, an adjustment may be made for betterment or depreciation and physical condition on:

    i.   Batteries;

    ii.   Tires

    iii.   Engines and transmissions, if the engine has greater than 80,000 miles, and

    iv.   Any other mechanical parts that are nonfunctioning or inoperative."

- "The actual cash values determined by the market value, age, and condition of

9

the vehicle at the time the loss occurs."

- "We may, at our option:
    i. Pay for the loss in money; or
    ii. Repair or replace the damaged or stolen property."
- "We may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses, or loss payable under this policy.  Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology."
- "If any provision of this policy fails to conform to the statues of the state listed on your application as your residence, the provision shall be deemed amended to conform to such statues.  All other provisions shall be given full force and effect.  Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your applicable as your residence."

27.     Through the terms of the policy, both those alleged herein, and those terms contained in Exhibit A, Progressive incorporated the requirements of the California Insurance Code, section 10 C.C.R. 2695.8(b) relating to the adjustment of total loss vehicle claims. Progressive breached the terms of the policy by failing to adhere to the most basic standards incorporated into the policy, and set forth in 10 C.C.R. 2695.8(b).

28.     Progressive knows that its insureds making total vehicle loss claims usually suffer bodily injuries, lose time from work, and have lost their only means of transportation.  As a result of these extenuating circumstances, Progressives' insureds are often at a severe disadvantage when it comes to settling and negotiating these claims.  For those making a claim against Progressive, they need to resolve the claim as quickly as possible, even if it is for a loss, because they have to try to get back on their feet as soon as possible.

29.     In the case of Bobby Jones, as his wife was seriously injured, and he needed transportation for his family, he had no choice to but to try to quickly resolve the claim with Progressive.  The continued delay caused financial damages to Progressive's insureds.

30.     At all relevant times, Mr. Jones had procured a Progressive automobile insurance policy that covered the 1999 Chevrolet Venture, and included full comprehensive coverage for his 1999 Chevrolet Venture.

31.     Shortly after the November 18, 2015 crash, Mr. Jones filed a claim for the property damages relating to the 1999 Chevrolet Venture.

32.     Attached hereto this Complaint, and as Exhibit A, is a true and correct copy of the automobile insurance policy Progressive issued to Bobby Jones for his 1999 Chevrolet Venture (hereinafter referred to as the "Policy").  The contract between Progressive and Bobby Jones stated Progressive would "pay for sudden, direct and accidental loss to a: covered auto."

33.     Progressive accepted the claim by Bobby Jones, deemed the 1999 Chevrolet Venture a "total loss vehicle", and attempted to negotiate a settlement with Bobby Jones.

34.     Progressive made a full and final offer to settle the claim for $2,488.40.  This was $761.60 less than Mr. Jones had paid less than a month earlier.

35.     Bobby Jones asserted that he had just purchased the vehicle on October 21, 2015, and requested that Progressive use that list price as the comparable vehicle.  Progressive refused to consider this sale as a comparable vehicle, which is Progressive's policy.  Mitchell has a policy wherein it refuses to consider the value of the Insured's own vehicle.

36.     Instead, Progressive obtained three other "comparable vehicle" quotes through Mitchell International Inc.  Mitchell and Progressive used two other vehicles, one from Portland Oregon and the other from Oklahoma City, Oklahoma.

37.     For example, the 1999 Chevrolet Venture, VIN 1GNDX03E2XD155227, from Oklahoma City, Oklahoma was represented by Progressive and Mitchell as a "comparable vehicle".  Progressive and Mitchell asserted this "comparable vehicle", after adjustments, was worth $2,413.41.  This vehicle was in fact a prior 'total loss vehicle' (aka "salvage title").

SECOND AMENDED CLASS ACTION COMPLAINT

Progressive and Mitchell are in the business of tracking "salvage vehicles" and have easy access to databases which quickly and efficiently identify such vehicles as being salvaged. Progressive and Mitchell consistently use such information to set rates and determine (i.e. Reduce) payment benefits when a previously salvaged vehicle suffers another loss. The fact that 1999 Chevrolet Venture, VIN 1GNDX03E2XD155227 was a prior total loss vehicle was never disclosed by Progressive or Mitchell, and it was never adjusted for in the appraisal determination, despite their having full knowledge this was a prior total loss vehicle.

38.     The third "comparable vehicle" Mitchell and Progressive used were alleged quotes from dealers in the area. Mitchell and Progressive claim they obtain quotes from Calidad Motors and Ace Auto Dealers for $3,000.00 and $2,600.00 respectively. However, Mitchell and Progressive never actually obtained a quote from these licensed dealers, or any other licensed dealer. Mitchell and Progressive misrepresented the fact that Calidad Motors and Ace Auto Dealers would not give them a market quote for the 1999 Chevrolet Venture. Mitchell and Progressive misrepresented their claims to both Bobby Jones and the dealers, and failed to other use good faith and fair dealing in this valuation method.

39.     Between November 18, 2015 and about December 7, 2015, a series of email communications between Shakir H. Cordice and Tim Chapman at Progressive and Plaintiff ensued in an attempt by Mr. Jones to obtain a fair valuation for his total loss vehicle.

40.     At all relative times Shakir H. Cordice and Tim Chapman were authorized agents of Progressive, and acted within the course and scope of employment.

41.     During the email communications, Mr. Cordice and other Progressive agents disclosed the Mitchell valuation reports upon which Progressive and Mitchell based its low ball offer. Mr. Jones reviewed the Mitchell valuation reports before agreeing to settle his total loss claim with Progressive. The Mitchell valuation reports used comparable vehicles, as alleged herein in paragraphs 33 and 34. At the time, Mr. Jones was not aware that the representations made by Mr. Cordice and Mitchell were in fact false.

42.     Mitchell and Progressive knew that the representations made by the Progressive

SECOND AMENDED CLASS ACTION COMPLAINT

agents were false, including those outlined in paragraphs 33 and 34 herein.

43.     Mitchell knew the reports and information were going to be used by Progressive insureds in determining whether the total loss vehicle offer made by Progressive should be accepted.

44.     Mr. Jones submitted the purchase of his own vehicle he purchased on October 21, 2015 as a comparable vehicle to Progressive. On December 3, 2015, Mr. Cordice emailed Mr. Jones stating "Mitchells [sic], the company that determines the values on vehicles, unfortunately cannot take you [sic] vehicle into consideration for the valuation." This statement was false, and in a direct misrepresentation of California law (both common law fraud, and violations of the California Insurance Code).

45.     Based on these and other misrepresentations, Bobby Jones was induced to accept a reduced valuation of his 1999 Chevrolet Venture.  Mr. Jones reasonably believed Mr. Cordice was telling the truth, both when he said they could not consider a reasonable comparable from Mr. Jones, and with regard to the Mitchell valuation reports.  Mr. Jones had no reason to suspect his own insurance company was lying to him.

46.     Progressive spends millions of dollars advertising its insurance advertising its insurance services. In those advertisements, Progressive holds itself out as an expert in the automobile insurance industry.  Progressive bills itself as a fair and honest company, and induces its insureds to trust them through the repeated advertising.

47.     Progressive made a final offer to value Mr. Jones' vehicle at $2,800.00.  Based on the representations as alleged above, Mr. Jones accepted the final valuation made by Progressive to finalize his claim.  At the time of acceptance, Mr. Jones did not know of the false representations made by Progressive and Mitchell.  If Mr. Jones was aware of the false representations, he would not have accepted the $2,800.00 valuation Progressive and Mitchell asserted to be the fair market value.

48.     In fact, the fair market value of Mr. Jones' vehicle at the time of the crash was significantly higher than the final offer by Progressive.  If Progressive had made accurate

1   representations about the comparable it asserted in this case, Mr. Jones would have recovered a

2   significantly higher amount from Progressive pursuant to the automobile policy.  The fair market

3   value that Progressive would have offered had Mitchell not provided fraudulent comparable

4   vehicles would have been significantly higher than $2,800.00.

5        49.    Progressive and Mitchell operate on an unequal playing field, compared to its

6   customers and insured.  Progressive and Mitchell write the policies, have access to vast amounts

7   of information and finances, and has teams of lawyers should a claim be litigated.  Insureds on the

8   other hand, usually do not have the knowledge necessary to adequately determine if the value

9   Progressive and Mitchell are assigning to the total loss vehicle is necessary.  Insureds, having just

10   lost the use of their vehicle, are at a significant bargaining disadvantage when Progressive and

11   Mitchell offer compensation based on incomparable vehicles because the Insured frequently

12   depend on the immediate payment of money in order to secure a replacement vehicle so they can

13   get themselves or others to school, work or otherwise handle their daily responsibilities.

14        50.    All of Progressive and Mitchell's acts as herein alleged, were done with the prior

15   approval of, with the knowledge of, and/or the express direction or ratification of an officer,

16   director, or managing agent of Progressive.

17        51.    That is reason for the California Insurance Regulations relating to fair claims

18   settlement practices is to avoid misrepresentation and fraud by insurers in adjusting automobile

19   claims.

20   **CLASS ACTION ALLEGATIONS**

21        52.    This action is brought pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R.

22   Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.  Plaintiff brings

23   this class action on behalf of himself and all other persons similarly situated.  Plaintiff brings this

24   action in a representative capacity to remedy and put an end to the ongoing unlawful, unfair and

25   fraudulent business practices alleged herein, and to seek redress on behalf of all those persons

26   who have been affected thereby.  Private enforcement is necessary and places a disproportionate

27   financial burden on the Plaintiffs in relation to their stake in the matter.

28

1

*Class Definition*

2      53.      Plaintiff brings this action individually and on behalf of the following class (the

3   "Class"):

4              Injunctive Relief Class:  The First Party Insureds of Progressive Insurance

5              who, as California Residents, received comparable vehicle information from

6              Progressive or Mitchell International Inc. for their first party total vehicle

7              property loss during the four years preceding the filing of this action.

8              Restitution Subclass(es):

9              1.  The First Party Insureds of Progressive Insurance who, as California

10             Residents, did not receive adequate compensation for their first party total

11             vehicle property loss during the four years preceding the filing of the action

12             because Defendants Progressive and Mitchell International Inc. used vehicles

13             with salvage titles as a "comparable vehicle" without disclosing the fact that

14             they were salvage vehicles, and without making any adjustment for the fact

15             that it used a salvage vehicle as a comparable.

16             2.  The First Party Insureds of Progressive Insurance who, as California

17             Residents, did not receive adequate compensation for their first party total

18             vehicle property loss during the four years preceding the filing of the action

19             because Defendants Progressive and Mitchell International Inc. failed to

20             properly seek, use and report Dealer quotes as required by law.

21             3.  The First Party Insureds of Progressive Insurance who, as California

22             Residents, did not receive adequate compensation for their first party total

23             vehicle property loss during the four years preceding the filing of the action

24             because Progressive and Mitchell International Inc. ignored "comparable

25             vehicles" from licensed dealers that it deemed to be priced too high.

26             4.  The First Party Insureds of Progressive Insurance who, as California

27             Residents, did not receive adequate compensation for their first party total

28

SECOND AMENDED CLASS ACTION COMPLAINT

vehicle property loss during the four years preceding the filing of the action because Progressive and Mitchell International Inc. ignored the Insured's purchase price for the vehicle when the purchase was made during the time frame in which other supposedly "comparable vehicles" were considered.

5.   The First Party Insureds of Progressive Insurance who, as California Residents, received comparable vehicle information from Progressive or Mitchell International Inc. for their first party total vehicle property loss during the four years preceding the filing of this action.

54.   Excluded from the Classes are: Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such person's immediate families, and the presiding judge(s) in this case and his, her or their immediate family

*Numerosity*

55.   Plaintiffs are unable to state the precise number of members of the class or subclass (generally referred to together herein as "the class") because that information is in the sole possession of Progressive and Mitchell. Plaintiff estimates that the class consists of hundreds, if not thousands, of individuals throughout the State of California, and is so numerous that joinder of all members would be impracticable. The exact size of the class, and the identity of the members thereof, will be readily ascertainable from the business records of Progressive, Mitchell and/or its agents.

*Common Questions of Law and Fact that Predominate*

56.   There is a community of interest among the members of the class in that there are questions of law and fact common to the class that predominate over questions affecting only individual members. Proof of a common set of facts will establish the liability of Defendants, and the right of each member of the class to recover. These questions of law and fact include:

a.   Whether Progressive disclosing all relevant information relating to "comparable vehicles" it uses for total loss vehicles;

SECOND AMENDED CLASS ACTION COMPLAINT

1       b.  Whether the "comparable vehicles" Progressive used were in fact "comparable

2           vehicles";

3       c.  Whether Progressive had a business practice to reduce total vehicle loss

4           payments by application of a statistical or mathematical method that was not

5           authorized by the Policy;

6       d.  Whether Progressive took unreasonable deductions from "comparable

7           vehicles" in its calculation of the total loss vehicles;

8       e.  Whether Progressive had a business practice to reduce payments for total loss

9           vehicles based on using improper "comparable vehicles" in its calculation for

10          the total loss vehicles;

11      f.  Whether Progressive and Mitchell failed to adjust the price of "comparable

12         vehicles" based on significant deviating factors;

13      g.  Whether Progressive fails to disclose material facts about the "comparable

14         vehicles" in it calculation for the total loss vehicles;

15      h.  Whether Progressive's use of Mitchell International and its software to

16         determine "comparable vehicles" and calculate the value of total loss vehicles

17         constituted fraud;

18      i.  Whether Progressive's use of Mitchell International and its software to

19         determine "comparable vehicles" and calculate the value of total loss vehicles

20         constituted breach of contract;

21      j.  Whether Progressive's use of Mitchell International and its software to

22         determine "comparable vehicles" and calculate the value of total loss vehicles

23         constituted an unfair and unlawful business practices;

24      k.  Whether Progressive's use of Mitchell International and its software to

25         determine "comparable vehicles" and calculate the value of total loss vehicles

26         constituted negligent misrepresentation;

27      l.  Whether Progressive and Mitchell's "comparable vehicle" representations to

28

SECOND AMENDED CLASS ACTION COMPLAINT

its insured were made with the intent to defraud its customers;

m.  Whether Progressive and Mitchell's refusal to accept as "comparable vehicle" the purchase price of the insured vehicle where the vehicle was purchased within 90 days of the date of loss;

n.  Whether Progressive and Mitchell conspired to reduce the amount Progressive paid in claims for total loss vehicles through a process of not fully disclosing all relevant information for its proposed "comparable vehicles";

o.  The nature and extent of the knowledge Progressive had of the scheme Mitchell implemented;

p.  Whether Mitchell improperly obtained quotes from dealers to use as a "comparable vehicle";

q.  Whether Mitchell profited directly from lowering the "total loss vehicle" price;

r.  Whether Mitchell and Progressive intentionally schemed to unlawfully reduce the total payments to insured for "total loss vehicles".

57.     These questions of law or fact common to the Class overwhelmingly predominate over any individual issues, such that by prevailing on its own claims, Plaintiff will necessarily establish Defendant's liability as to all Class members.

*Typicality*

58.     Plaintiff's claims are typical of those of the class he seeks to represent, and will fairly and adequately represent the interests of the class and subclass.  Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

*Adequacy of Representation*

59.     Plaintiff can and will fairly and adequately represent and protect the interests of the Class.

60.     The claims of Plaintiff are substantially similar, if not identical, to those of absent Class members. Without the Class representation provided by Plaintiff, no Class members will receive legal representation or redress for their injuries.

18

61.     Plaintiff and Class counsel have the necessary financial resources to adequately and vigorously litigate this class action.  Plaintiff and Class counsel are aware of their fiduciary responsibilities to Class members and are determined to diligently discharge those duties by venously seeking the maximum possible recovery for the Class.

*Superiority*

62.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by the individual class members are small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class members to seek redress individually.  The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Defendant, and would establish incompatible standards of conduct.  Further, a class action is in the interests of justice because many class members are likely unaware that Progressive and Mitchells' conduct is illegal, are unaware of the scope and extent of the Progressive/Mitchell scheme, and lack the financial and informational resources to protect their rights.

*23(b)(2) Allegation*

63.     Class certification is appropriate under Federal Rule 23(b)(2) because defendants have acted on grounds generally applicable to Plaintiff and the Rule 23(b)(2) class members all of whom are at imminent risk of irreparable harm of victimization by defendants' continuing scheme.

## FIRST CAUSE OF ACTION
**Violations of Business and Professions Code § 17200, *et seq*.**

64.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

65.     Business and Professions Code § 17200 et seq., often referred to as the "Unfair Competition Law" or "the UCL," defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.  The UCL provides that a court may order injunctive relief and

19

1   restitution as remedies for any violations of the UCL.

2       66.     Beginning on an exact date unknown to Plaintiff, but at all times relevant herein

3   and during the four years preceding the filing of the Complaint in this action, Progressive and

4   Mitchell committed and they continue to commit acts of unfair competition proscribed by the

5   UCL, including the practices alleged herein in connection with the valuation of claims made on

6   first party insurance claims total loss vehicles.

7       67.     The business acts and practices alleged herein constitute unfair business practices

8   in that said acts and practices offend public policy and are substantially injurious to the public.

9   The acts and practices of Progressive and Mitchell violate California public policy that is tethered

10  to regulations governing persons engaged in the practice of adjusting claims on automobile

11  insurance policies.  For example, the unfair Trade Settlement Practices Regulations, set forth in

12  10 C.C.R. 2695.6, et seq. were promulgated in order to promote the good faith, prompt, efficient

13  and equitable settlement of claims on a cost effective basis. 10 C.C.R. §2695.1(2).

14      68.     The business acts and practices alleged hereinabove also violate the public policies

15  against misrepresentation and fraud by automobile insurance companies, and their agents, to its

16  insureds.

17      69.     The business acts and practices alleged herein constitute fraudulent business

18  practices in that said acts and practices are likely to deceive members of the public as to their

19  legal rights and obligations, and by use of such deception, may preclude such individuals from

20  exercising legal rights to which they are entitled.  In particular, Defendants' false communications

21  which misuse "comparable vehicles" and the devaluation of total loss vehicle are submitted to its

22  insured, and is meant to be relied upon by its insured.  The information it provides is known to be

23  untrue or deceitful, and intended to induce the insured to settle for a reduced valuation.

24      70.     The unlawful, unfair and fraudulent business acts and practices of Progressive and

25  Mitchell described herein present a continuing threat to the public in that Progressive and

26  Mitchell are currently engaging in such acts and practices, and will persist and continue to do so

27  unless and until an injunction is issued by this Court.

28

SECOND AMENDED CLASS ACTION COMPLAINT

71.     Based on the language and communications from Progressive and Mitchell, Plaintiff reasonably believed he had no reasonable option but to accept the amount offered by Progressive for his 1999 Chevrolet Venture.

72.     As a direct and proximate result of the acts and practices described herein, Progressive, Mitchell and its agents have received and collected money from Plaintiffs and class members, and failed to fairly pay for claims made by those class members.  Progressive and Mitchell should be ordered to provide full and complete restitution of all amounts collected from class members.

73.     Pursuant to Business and Professions Code § 17203, Plaintiff seeks an order enjoining Progressive and Mitchell from engaging in such acts and practices as hereinabove alleged, and providing appropriate restitution to Plaintiff and members of the class.

74.     Pursuant to Code of Civil Procedure § 1021.5, Plaintiff seek recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action.  Plaintiff does not seek any relief greater than or different from the relief sought for the class.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### Fraud

75.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

76.     Progressive and Mitchell intentionally and knowingly made false statements to Bobby Jones about the value of his car to induce him to accept a reduced amount on his automobile insurance claim.

77.     Bobby Jones reasonably relied upon the misrepresentations.

78.     Bobby Jones suffered monetary damage as a direct result.

WHEREFORE, Plaintiff prays for declaratory and injunctive relief as set forth below.

//

21

### THIRD CAUSE OF ACTION
**Negligent Misrepresentation**

79.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

80.     Progressive and Mitchell negligently made false statements to Bobby Jones about the value of his car to induce him to accept a reduced amount on his automobile insurance claim.

81.     Bobby Jones reasonably relied upon the misrepresentations.

82.     Bobby Jones suffered monetary damage as a direct result.

WHEREFORE, Plaintiff prays for declaratory and injunctive relief as set forth below.

### FOURTH CAUSE OF ACTION
**Breach of Contract – Progressive**

83.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

84.     Progressive agreed to pay Bobby Jones for the reasonable value of his vehicle if it was a total loss vehicle, based on the contract contained in Exhibit A, and the provisions alleged in paragraphs 26 and 27, herein.

85.     Progressive breached this contract by misrepresenting material facts to Mr. Jones Detriment, and failing to pay the reasonable value for the claim.

86.     Progressive breached the contract by not utilizing claims reviews policies within the requirements set forth in this policy, attached as Exhibit A.

87.     Progressive breached the contract by failing to adhere to the California Insurance Code total loss vehicle requirements which were incorporated into the contract, pursuant to paragraph 7.

88.     As a result, Mr. Jones accepted less than his vehicle was worth, and was otherwise damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION
**Breach of Implied Covenant of Good Faith and Fair Dealing – Progressive**

22

89.        Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

90.        At all times herein mentioned, Progressive knew, or in the exercise of good faith reasonably should have known that Plaintiff was legally entitled to recover the benefits under the aforementioned insurance policy, and the Progressive was obligated to provide Plaintiff with benefits under the insurance policy.

91.        Progressive intentionally, maliciously, and oppressively conducted themselves willfully and wrongfully and refused, and failed, to pay the benefits of the policy to Plaintiff, despite the fact that the benefits under the policy were due and payable to the Plaintiff and the Plaintiff was entitled to the full benefits of the policy.

92.        Progressive unreasonably failed to pay Plaintiff's claim for benefits under the total loss vehicle provisions of his policy under the policy.  All of Progressive's acts as herein alleged, were done with the prior approval of, with the knowledge of, and/or the express direction or ratification of an officer, director, or managing agent of Progressive, consistent with the definitions contained in *California Code of Regulations,* Title 10, Section 2695.12.

93.        As a proximate result of Progressive's wrongful conduct, as aforementioned, Plaintiff has been denied the reasonable value for his total loss vehicle.

94.        Progressive's actions in wrongfully reducing the value of total loss vehicles, as aforementioned herein, constituted a pattern and practice of Progressive, which is designed to wrongfully withhold payment of claims with the intent of ignoring the interest of their insured.

WHEREFORE, Plaintiff prays for relief as set forth below.


## **PRAYER FOR RELIEF**

Plaintiff respectfully prays for relief as follows:

1.        For an order certifying the proposed class and subclass;

SECOND AMENDED CLASS ACTION COMPLAINT

2.     For an order finding and declaring that Progressive and Mitchells' acts and practices as challenged herein are unlawful, unfair and fraudulent;

3.     For an order preliminarily and permanently enjoining Progressive and Mitchell from engaging in the practices challenged herein;

4.     For an order on behalf of the subclass against Progressive and Mitchell of restitution and/or disgorgement in an amount to be determined at trial;

5.     For an accounting;

6.     For pre-judgment interest to the extent permitted by law;

7.     For an award of attorneys' fees, costs and expenses incurred in the investigation, filing and prosecution of this action under any applicable provision of law;

8.     For interest provided by law including, but not limited to, *California Civil Code* section 3291.

9.     For declaratory relief; and

10.    For such other and further relief as the Court deems proper.

Dated: May 25, 2017                    Respectfully Submitted,


                                       _____/S/_____
                                       DAVID A. KLECZEK
                                       Attorney for Plaintiff

SECOND AMENDED CLASS ACTION COMPLAINT

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all triable claims asserted in this Complaint.

Dated: May 25, 2017                    Respectfully Submitted,


                                        ___/S/_____
                                        DAVID A. KLECZEK
                                        Attorney for Plaintiff

SECOND AMENDED CLASS ACTION COMPLAINT