1
2
3
4

KLECZEK LAW OFFICE
David A. Kleczek (SBN 244045)
825 Washington Street, Suite 301
Oakland, CA 94607
Telephone:  (510) 663-7100
Facsimile:  (510) 663-7102
david.Kleczek@kleczeklaw.com

5
6
7
8

LAW OFFICES OF H. PAUL BRYANT
H. Paul Bryant (SBN 126037)
825 Washington Street, Suite 303
Oakland, CA 94607
Telephone:  (510) 272-0700
Facsimile:  (510) 272-0776
hpaulbryantlaw@gmail.com

9

Attorneys for Plaintiff Bobby Jones
And the Proposed Class

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISCTRICT OF CALIFORNIA

13

14  BOBBY JONES, individually, and on behalf    )   **Case No. 3:16-cv-06941 JD**
15  of all others similarly situated,           )
                                                )   **CLASS ACTION**
16                           Plaintiffs,         )
17  v.                                          )   **THIRD AMENDED COMPLAINT FOR**
                                                )   **UNLAWFUL, UNFAIR AND**
18  PROGRESSIVE DIRECT INSURANCE               )   **DECEPTIVE BUSINESS PRACTICES,**
    COMPANY, PROGRESSIVE SELECT                 )   **FRAUD, NEGLIGENT**
19  INSURANCE COMPANY, PROGRESSIVE             )   **MISREPRESENTATION, BREACH OF**
    CASUALTY INSURANCE COMPANY,                 )   **CONTRACT, BREACH OF THE**
20  MITCHELL INTERNATIONAL, INC.; and          )   **IMPLIED COVENANT OF GOOD**
    DOES 3 through 50, inclusive,               )   **FAITH AND FAIR DEALING,**
21                                              )   **INTENTIONAL INTERFERENCE WITH**
                             Defendants.         )   **CONTRACTUAL RELATIONS,**
22                                              )   **CONSUMER LEGAL REMEDIES ACT**
                                                )   **VIOALTIONS, and DECLARATORY**
23                                              )   **RELIEF**
                                                )
24                                              )
                                                )   **DEMAND FOR JURY TRIAL**
25                                              )
26  _____)

27

28

_____
*THIRD AMENDED CLASS ACTION COMPLAINT*

Plaintiffs BOBBY JONES, individually and on behalf of all others similarly situated, hereby complain against Defendants PROGRESSIVE SELECT INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, (Hereinafter from time to time referred to collectively as "PROGRESSIVE"), and MITCHELL INTERNATIONAL, INC. (Hereinafter "MITCHELL") and DOES 3 through 50 (generally referred to collectively herein as "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1. In 2010, property damage claims from automobile accidents amounted to $76 billion.[1]  A large portion of those property damage claims are made by consumers to their own automobile insurance company.  Where the damage to the vehicle exceeds the cost to repair, the vehicle is deemed a total loss, and the consumer is entitled to recover for the reasonable value of the vehicle just prior to the collision.  The consumer is paid by their insurer based on finding "comparable automobiles" and using those as the measuring stick to determine the value.

2. PROGRESSIVE is a conglomerate of several subsidiary companies. PROGRESSIVE uses different underwriting companies for different purposes.  However, PROGRESSIVE also administers and manages the claims process using employees from one subsidiary.  While one entity may be the underwriter of a particular insurance policy, that policy is administered by the same PROGRESSIVE employees that administer all the claims identically. PROGRESSIVE claims adjusters handle claims involving several different PROGRESSIVE underwriting subsidiary corporations utilizing the same policies and procedures.

3. PROGRESSIVE SELECT INSURANCE COMPANY underwrote an insurance policy to Bobby Jones which was in effect at all times relevant to this complaint, and is attached hereto as EXHIBIT A.

4. PROGRESSIVE CASUALTY INSURANCE COMPANY, and DOES 4 through 50, administered and facilitated payment to insureds with policies underwritten by PROGRESSIVE SELECT INSURANCE COMPANY.

---

[1] U.S. Department of Transportation, 2010.

THIRD AMENDED CLASS ACTION COMPLAINT

5.      PROGRESSIVE CASUALTY INSURANCE COMPANY takes possession of the vehicles it deems a total loss, and takes ownership through title to insureds vehicles from PROGRESSIVE SELECT INSURANCE COMPANY.  PROGRESSIVE CASUALTY INSURANCE COMPANY writes any payments to for the policies underwritten by issuing checks from its own accounts. PROGRESSIVE CASUALTY INSURANCE COMPANY administers the entire claims process for PROGRESSIVE SELECT INSURANCE COMPANY. PROGRESSIVE CASUALTY INSURANCE COMPANY determines the policies and procedures which are followed for PROGRESSIVE SELECT INSURANCE COMPANY.  PROGRESSIVE CASUALTY INSURANCE COMPANY reaps all or part of the earnings from polices of PROGRESSIVE SELECT INSURANCE COMPANY.  PROGRESSIVE CASUALTY INSURANCE COMPANY collects insurance premiums from insureds associated with both underwriting companies.

6.      MITCHELL developed a product call the Mitchell Work Center Total Loss (hereinafter WCTL).  WCTL is designed specifically to formulate offers to insureds for automobile insurance companies.  As the name suggests, WCTL determines which comparable vehicles are used.  The WCTL adjusts the price based on what it determines to be the average condition of the car and compares that to the condition of the insured's car.

7.      Since at least 2010, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL have worked as partners for determining the value of total loss claims.

8.       PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY have outsourced their duty to find "comparable automobiles" for valuation purposes to MITCHELL.

9.      To increase its profit margins, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL have engaged in unlawful, unfair and deceptive business practices which facilitate and enable them to present 'lowball' property damage offers to their insured where there is a total loss situation.  To

3

wit, the Defendants prepared false and misleading WCTL reports and submitted "comparable automobiles" to their insureds for purposes of convincing them to accept a sum that is less than the 'actual value' of the total loss vehicle.

10.     In their scheme to reduce the value of the "comparable automobiles," the Defendants employed deceptive practices and used methods that constituted outright deception. Defendants used out-of-market "comparable vehicles." Defendants failed to fairly adjust for differences between "comparable vehicles" and the total loss vehicles. Defendants routinely used as "comparable vehicles" vehicles that had previously been deemed a total loss, without making any adjustments for the differences in the vehicles. Defendants routinely altered the system to adjust the actual value of the vehicle downward.

11.     In other words, the deck was illegally and deceptively stacked against the insureds. The WCTL system would only adjust a vehicles actual value downward. The WCTL system was designed to reject comparable vehicles from insureds. The WCTL system hid behind a regulatory scheme in hopes of shielding themselves of liability; however, the wrongful conduct is so egregious that it constitutes fraud and violations of the UCL.

12.     PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY at all relevant times had full knowledge that MITCHELL was engaging in a scheme to defraud insurers by undervaluing the "comparable automobiles". All the "comparable vehicle" reports prepared by MITCHELL are disclosed to PROGRESSIVE CASUALTY INSURANCE COMPANY. Thus, PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY knew or should have known of this scheme to illegally deflate the "comparable vehicles." Further, Progressive cannot contract away its obligations to operate lawfully to MITCHELL to increase its profit margins.

## PARTIES

13.     Plaintiff Bobby Jones is an individual over 18 years of age. He is, and at all relevant times was, a resident of Contra Costa County, California.

14.     PROGRESSIVE CASUALTY INSURANCE COMPANY is an insurance

4

company that provided insurance services to Bobby Jones.  They employed adjusters, issued checks, and collected premiums relating to the policy attached as Exhibit A.  They made all the decisions, policies, and procedures concerning the handling of Mr. Jones claims and all class members.

15.     PROGRESSIVE SELECT INSURANCE COMPANY is an insurance company that works closely and partners with PROGRESSIVE CASUALTY INSURANCE COMPANY to provide insurance services to the citizens of the State of California.

16.     PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY worked in a partnership in concert with each other.  They comingled assets.  They used a common marketing and advertising scheme.  For all practical purposes these two companies were involved in a joint venture, and acted as the agent for the other.   According to The Progressive Corporation's 2015 balance sheet, they earned $1,300,500,000.00 after taxes in net income primarily through the insurance business.

17.     Defendant MITCHELL is a third-party provider which provides third-party administrative services for claims administration.  MITCHELL is a Delaware Corporation doing business.  In this case, MITCHELL provided claims services for PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY relating to the valuation of total loss vehicles in the State of California.

18.     Defendants DOES 3 through 50 are persons or entities whose true names and capacities are presently unknown to Plaintiff, who therefore sues them by such fictitious names.  Plaintiff is informed and believes and on that basis, alleges that each of the fictitiously named defendants perpetrated some or all of the wrongful acts alleged herein, is responsible in some manner for the matters alleged herein, and is jointly and severally liable to Plaintiff.  Plaintiff will seek leave of court to amend this complaint to state the true names and capacities of such fictitiously named defendants when ascertained.

19.     At all times mentioned herein, each named defendant and each DOE defendant was the agent or employee of each of the other defendants and was acting within the course and

1   scope of such agency or employment and/or with the knowledge, authority, ratification and

2   consent of the other defendants.  Each defendant is jointly and severally liable to Plaintiff and to

3   the members of the proposed class.

4                        **JURISDICTION AND VENUE**

5          20.     This Court has subject matter jurisdiction of the claims asserted herein pursuant to

6   28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value

7   of $5,000,000, exclusive of interest and costs, and is a class action in which members of the

8   putative plaintiff class are citizens of States different from Defendant.

9          21.     Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendants

10  regularly transact and solicit business in this District.

11         22.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(a) because

12  Plaintiffs' and the Defendants are citizens of different states.

13         23.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because

14  Defendant resides here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events

15  and omissions giving rise to this action occurred in this District.

16            **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

17         24.     At all relevant times, Defendants, and each of them, engaged in various schemes to

18  deflate the value of declared "total loss vehicles" (vehicles where an election is made to forego

19  any vehicle repair) in order to pay first party insureds less than the actual pre-loss value of the

20  total loss vehicle.

21         25.     MITCHELL has for decades worked in the automobile insurance industry advising

22  and helping insurance companies lower the costs to adjust and settle claims.  The WCTL program

23  developed by MITCHELL has been adopted by all the California Progressive entities, including

24  PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT

25  INSURANCE COMPANY.

26         26.     WCTL is intentionally designed to fraudulently lower the offer made by

27  PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT

28

6

1   INSURANCE COMPANY to their insured.  WCTL does this by ignoring pertinent data when it

2   would increase the comparable vehicle price, and by incorporating the same pertinent data when it

3   would decrease the comparable vehicle price.  A specific example is the WCTL misrepresents the

4   status of prior salvage vehicles and holds these vehicles out to insured as comparable vehicles.

5        27.    PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE

6   SELECT INSURANCE COMPANY have a policy of disclosing every MITCHELL WCTL report

7   to their insured.  MITCHELL knows that the reports are distributed to every insured, and knows

8   the insured will review and rely upon the reports in making the determination to settle the claim.

9   MITCHELL knows that failing to disclose that vehicle is a salvage title is a material

10  misrepresentation, and knows that the failure to disclose this information will result in an overall

11  lower payment to the insured.

12       28.    In every instance of a total loss vehicle claim, PROGRESSIVE CASUALTY

13  INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY check

14  whether the insured's vehicle (the person making the claim) was a salvage title vehicle.  They do

15  this because if it was a prior salvage title vehicle, then they would find only other salvage title

16  vehicles to use a comparable vehicles.  This compartmentalization is intentional and specifically

17  designed by MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY and

18  PROGRESSIVE SELECT INSURANCE COMPANY to try to evade detection and liability.

19  However, this is part of the broader scheme to ultimately defraud PROGRESSIVE CASUALTY

20  INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY's insureds.

21       29.    Another example, the WCTL program 'double dips' deductions in its

22  methodology.  The WCTL derives an average vehicle condition rating based on the average of all

23  vehicles of that make and model.  Then, the WCTL looks at the insured specific vehicle and

24  deducts for areas it deems are below normal wear and tear.  This ultimately results in the insured

25  vehicle being rated down twice.  The first is when the WCTL takes the vehicle average rating

26  (which already includes vehicles that may have more wear and tear), and then again reduces the

27  value by the specific wear and tear.  Mitchell knows that its program is double dipping, and

28

knows that insured will rely upon their WCTL reports, but continues to produce and distribute these erroneous reports.

30.     The WCTL allows PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL to further manipulate the condition rating system, thereby reducing the final payment to the insured.  The WCTL has a rating system of 1 through 5, with 5 being the best and 1 being the worst.  The WCTL has a series of twelve Condition Adjustments.  However, for many vehicles, including Bobby Jones' vehicle, the WCTL system takes all discretion from the adjuster and blocks out the ability of the adjuster to label the vehicle as a 4 or 5, without respect to the condition of the vehicle.  Even if the adjuster believes the vehicle warrants a rating of 4 or 5, the WCTL system overrides the discretion of the adjuster and assigns a 3.  This is another example of the double dipping process the WCTL system uses to achieve high profits for PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY.

31.     PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY each represented to its first-party insureds, either directly or indirectly through their agents, that it was using "comparable vehicles" to determine the value of the total loss vehicle.  Instead, MITCHELL, with the knowledge and consent of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY, employed various schemes to select the 'vehicles' in a manner which allowed them to reduce the calculated value they paid for "total loss vehicles."  By affirmatively representing to the Insured that they were using comparable vehicles, when PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL knew or should have known such representation was false, they and their agents misrepresented the essential facts to the first party insured that they were using 'comparable vehicles' in determining the value of the total loss vehicle.

32.     At all relevant times, Progressive and MITCHELL had actual knowledge that the representations they made to Bobby Jones and other class members as herein alleged were false.

Progressive and MITCHELL collected and used information about whether a comparable car was previously a total loss vehicle.  Progressive and MITCHELL used this information when it was to their advantage; when the insured car was a prior total loss Progressive and MITCHELL used this information to reduce the valuation of the insured's car.  However, when the comparable vehicle was being offered, Progressive and MITCHELL suppressed the information and failed to properly adjust the value of the car.

33.    One scheme was for MITCHELL, with the consent and knowledge of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY, to use vehicles with salvage titles as a "comparable vehicle" without disclosing the fact that they were salvage vehicles, and without making any adjustment for the fact that it used a salvage vehicle as a comparable.

34.    In a second scheme, MITCHELL, with the consent and knowledge of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY, had a pattern and practice of representing to insured that it obtained a 'dealer quote' from a local dealer.  In fact, MITCHELL had a practice to not contact licensed dealers to obtain a quote and to simply make up numbers to serve the needs of MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY.

35.    In a third scheme, PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL had a policy of ignoring "comparable vehicles" from licensed dealers that it deemed to be priced too high.  Progressive and MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY International Inc. would instead use non-compliant "comparable vehicles" whose representation as a "comparable vehicle" was either fabricated, a deflated value vehicle, a previously used total loss vehicles (i.e., salvage vehicle), or through some other misrepresentation concerning the "comparable vehicles."  There is no basis in law or in the contract between PROGRESSIVE CASUALTY INSURANCE COMPANY and

1   PROGRESSIVE SELECT INSURANCE COMPANY and their insured that supports determining

2   actual cash value by excluding comparable vehicles that PROGRESSIVE CASUALTY

3   INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY deems too

4   high.

5        36.    In a Fourth scheme, PROGRESSIVE CASUALTY INSURANCE COMPANY

6   and PROGRESSIVE SELECT INSURANCE COMPANY MITCHELL had a policy of ignoring

7   the Insured's purchase price for the vehicle; even when the purchase was made during the time

8   frame in which other supposedly "comparable vehicles" were considered.

9                          **Plaintiff Bobby Jones**

10       37.    On October 21, 2015, Bobby Jones purchased a 1999 Chevrolet Venture for a list

11   price of $3,250.00, before tax, title and license.

12       38.    On November 18, 2015, Mr. Jones' 1999 Chevrolet Venture was involved in a

13   serious automobile accident.  As is common in incidents resulting in total loss vehicle claims,

14   Mrs. Jones was admitted to the hospital for injuries relating to the crash.  Mr. Jones was without a

15   car, his wife was hospitalized.  Time was of the essence for Mr. Jones in that it was necessary to

16   resolve the claim with Progressive quickly so that he could focus on resolving issues common to

17   those that incur a total loss vehicle, such as obtaining a new vehicle, dealing with injuries to you

18   and those in your vehicle, and making up for time lost from work.

19       39.    At all relevant times the insurance policy attached as Exhibit A had the following

20   relevant clauses in effect:

21       • "If you pay the premium for this coverage, we will pay for sudden, direct and

22          accidental loss to a:

23              i.  Covered auto, including an attached trailer;

24              ii. Non-owned auto;

25          And its custom parts or equipment, resulting from collision."

26       • "The limit of liability for loss to a covered auto, non-owned auto, or custom

27          parts or equipment is the lowest of:

28                                    10

      i.   The actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;

      ii.   The amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

      iii.   The amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or

      iv.   The State Amount shown on the declarations page for that covered auto."

- "To determine the amount necessary to repair or replace the damages property as referred to in subsection 1, the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage included broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint.  The reduction for unrepaired prior damage is the cost of labor parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damage in the loss."

- "To determine the amount necessary to repair or replace the damages property as referred to in subsection 1, an adjustment may be made for betterment or depreciation and physical condition on:

      i.   Batteries;

      ii.   Tires

      iii.   Engines and transmissions, if the engine has greater than 80,000 miles, and

      iv.   Any other mechanical parts that are nonfunctioning or inoperative."

- "The actual cash values determined by the market value, age, and condition of the vehicle at the time the loss occurs."

- "We may, at our option:

    i. Pay for the loss in money; or

    ii. Repair or replace the damaged or stolen property."

- "We may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses, or loss payable under this policy.  Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology."

- "If any provision of this policy fails to conform to the statues of the state listed on your application as your residence, the provision shall be deemed amended to conform to such statues.  All other provisions shall be given full force and effect.  Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your applicable as your residence."

40.    Through the terms of the policy – both those alleged herein, and those terms contained in Exhibit A – PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY breached the terms of the policy by failing to adhere to the most basic standards incorporated into the policy. PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY had a policy of not paying actual cash value for total loss vehicles based on misrepresentations made to their insured.

41.    PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL know that PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY's insureds making total vehicle loss claims usually suffer bodily injuries, lose time from work, and have lost their only means of transportation. As a result of these extenuating circumstances, Progressives'

1    insureds are often at a severe disadvantage when it comes to settling and negotiating these claims.

2    For those making a claim against PROGRESSIVE CASUALTY INSURANCE COMPANY and

3    PROGRESSIVE SELECT INSURANCE COMPANY, they need to resolve the claim as quickly

4    as possible, even if it is for a loss, because they have to try to get back on their feet as soon as

5    possible.

6          42.     In the case of Bobby Jones, as his wife was seriously injured and he needed

7    transportation for his family, he had no choice to but to try to quickly resolve the claim with

8    Progressive.  The continued delay caused financial damages to PROGRESSIVE CASUALTY

9    INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY's insureds.

10         43.     At all relevant times, Bobby Jones had procured an automobile insurance policy

11   that covered the 1999 Chevrolet Venture, and included full comprehensive coverage for his 1999

12   Chevrolet Venture.  He purchased it from an organization which held itself out as "Progressive."

13   He accessed his information and statements at progressive.com.  He made payments to

14   "Progressive."  He emailed with representatives whose email contained the "@progressive.com"

15   email address. In fact, it was PROGRESSIVE CASUALTY INSURANCE COMPANY that

16   performed these function, in a joint venture with PROGRESSIVE SELECT INSURANCE

17   COMPANY, and perhaps other Progressive entities.

18         44.     Shortly after the November 18, 2015 crash, Mr. Jones filed a claim for the property

19   damages relating to the 1999 Chevrolet Venture.

20         45.     Attached hereto this Complaint, and as Exhibit A, is a true and correct copy of the

21   automobile insurance policy PROGRESSIVE CASUALTY INSURANCE COMPANY and

22   PROGRESSIVE SELECT INSURANCE COMPANY issued to Bobby Jones for his 1999

23   Chevrolet Venture (hereinafter referred to as the "Policy").  The contract between Progressive and

24   Bobby Jones stated Progressive would "pay for sudden, direct and accidental loss to a: covered

25   auto."

26         46.     PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE

27   SELECT INSURANCE COMPANY accepted the claim by Bobby Jones, deemed the 1999

28

1  Chevrolet Venture a "total loss vehicle," and attempted to negotiate a settlement with Bobby

2  Jones.

3    47.    PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE

4  SELECT INSURANCE COMPANY made a full and final offer to settle the claim for $2,488.40.

5  This was $761.60 less than Mr. Jones had paid less than a month earlier.

6    48.    Bobby Jones asserted that he had just purchased the vehicle on October 21, 2015,

7  and requested that PROGRESSIVE CASUALTY INSURANCE COMPANY and

8  PROGRESSIVE SELECT INSURANCE COMPANY use that list price as the comparable

9  vehicle.  PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE

10  SELECT INSURANCE COMPANY refused to consider this sale as a comparable vehicle, which

11  is Progressive's policy.  MITCHELL and PROGRESSIVE CASUALTY INSURANCE

12  COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY have a policy wherein it

13  refuses to consider the value of the Insured's own vehicle.

14    49.    MITCHELL obtained three other "comparable vehicle" quotes through the WCTL

15  program.  The WCTL suggested two vehicles, one from Portland Oregon and another from

16  Oklahoma City, Oklahoma. PROGRESSIVE CASUALTY INSURANCE COMPANY, through

17  its employee, Shakir Cordice emailed the WCTL reports to Bobby Jones.

18    50.    The 1999 Chevrolet Venture, VIN 1GNDX03E2XD155227, from Oklahoma City,

19  Oklahoma was represented by PROGRESSIVE CASUALTY INSURANCE COMPANY and

20  PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL as a "comparable

21  vehicle".  PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE

22  SELECT INSURANCE COMPANY and MITCHELL asserted this "comparable vehicle", after

23  adjustments, was worth $2,413.41.  This vehicle was in fact a prior 'total loss vehicle' (aka

24  "salvage title").  PROGRESSIVE CASUALTY INSURANCE COMPANY and MITCHELL are

25  in the business of tracking "salvage vehicles" and have easy access to databases which quickly

26  and efficiently identify such vehicles as being salvaged.  PROGRESSIVE CASUALTY

27  INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and

28

MITCHELL consistently use such information to set rates and determine (i.e. reduce) payment benefits when a previously salvaged vehicle suffers another loss. The fact that the 1999 Chevrolet Venture, VIN 1GNDX03E2XD155227 was a prior total loss vehicle was never disclosed by PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY or MITCHELL, and it was never adjusted for in the appraisal determination, despite their having full knowledge that this was a prior total loss vehicle.

51.     Due to the nature of the business the three organization are in, PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL knew they were passing off salvage title vehicles as non-salvage title vehicles to insured.

52.     The third "comparable vehicle" MITCHELL used were alleged quotes from dealers in the area. MITCHELL claim they obtain quotes from Calidad Motors and Ace Auto Dealers for $3,000.00 and $2,600.00 respectively. However, MITCHELL never actually obtained a quote from these licensed dealers, or any other licensed dealer. MITCHELL misrepresented the fact that Calidad Motors and Ace Auto Dealers would not give them a market quote for the 1999 Chevrolet Venture. MITCHELL misrepresented their claims to both Bobby Jones and the dealers, and failed to other use good faith and fair dealing in this valuation method.

53.     Bobby Jones called a MITCHELL representative to discuss the dealer quotes and other potential comparable vehicles. The MITCHELL representative stood by his dealer quotes and said that MITCHELL could not consider a comparable vehicle submitted by the insured.

54.     Between November 18, 2015 and about December 7, 2015, a series of email communications between Shakir H. Cordice and Tim Chapman at PROGRESSIVE CASUALTY INSURANCE COMPANY and Plaintiff ensued in an attempt by Mr. Jones to obtain a fair valuation for his total loss vehicle.

55.     At all relative times Shakir H. Cordice and Tim Chapman were authorized agents and employees of PROGRESSIVE CASUALTY INSURANCE COMPANY and

PROGRESSIVE SELECT INSURANCE COMPANY, and acted within the course and scope of employment.

56.     PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY has a policy of emailing the MITCHELL Work Center Total Loss reports to its insured every time there is a total loss claim.

57.     At all times, PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY's agents and employees relied upon the MITCHELL WCTL reports in determining actual cash value and in negotiating with customers. This reliance led to the adjusters appearing to act in good faith and trying to get the 'most' for the insureds.  This reliance was relied upon by PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY's insured and caused them to accept low ball offers because of the obstacles and time constraints to get a fair offer.

58.     During the email communications, Skakir Cordice disclosed the MITCHELL valuation reports upon which PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY based its low ball offer.  Mr. Jones reviewed the MITCHELL valuation reports before agreeing to settle his total loss claim with Progressive.  The MITCHELL valuation reports used comparable vehicles, as alleged herein in paragraphs 33 and 34.  At the time, Mr. Jones was not aware that the representations made by Mr. Cordice and MITCHELL were in fact false.

59.     Shakir Cordice relied upon the WCTL reports relating to the Bobby Jones matter. In that reliance, Shakir Cordice was forced to accept the WCTL valuation report, and could only offer a certain amount of money, up to his limit.  Bobby Jones had no choice but to accept the low ball offer, and suffer the approximately $700 loss, or go through a long and costly process.

60.     PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY know that insureds faced with this choice will more often chose to settle and suffer the relatively small loss.  The small loss per insured adds up to big gains for PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT

1  INSURANCE COMPANY and MITCHELL.

2      61.    MITCHELL at all times knew that the representations made by the

3  PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT

4  INSURANCE COMPANY agents were false.

5      62.    MITCHELL knew the reports and information were going to be used and relied

6  upon by PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE

7  SELECT INSURANCE COMPANY agents in determining whether the actual cash value for each

8  total loss vehicle.

9      63.    Each adjuster at PROGRESSIVE CASUALTY INSURANCE COMPANY and

10  PROGRESSIVE SELECT INSURANCE COMPANY had no discretion to deviate from the

11  actual cash value produced by the MITCHELL WCTL system.  The actual cash value produced

12  by the WCTL system completely controlled the amount the adjuster could offer the insureds.

13      64.    Mr. Jones submitted his own vehicle he purchased on October 21, 2015 as a

14  comparable vehicle to PROGRESSIVE CASUALTY INSURANCE COMPANY and

15  PROGRESSIVE SELECT INSURANCE COMPANY. Then Shakir Cordice contacted

16  MITCHELL to determine whether they could consider this as a comparable vehicle.  MITCHELL

17  advised Shakir Cordice that MITCHELL would not accept this as a comparable. After this

18  conversation with MITCHELL, and in reliance on the MITCHELL policy, on December 3, 2015,

19  Mr. Cordice emailed Mr. Jones stating "MITCHELLs [sic], the company that determines the

20  values on vehicles, unfortunately cannot take you [sic] vehicle into consideration for the

21  valuation."  This statement was false, and in a direct misrepresentation of California law (both

22  common law fraud, and violations of the California Insurance Code).   Mr. Jones relied upon the

23  MITCHELL policy in settling his claim.

24      65.    Based on these and other misrepresentations, Bobby Jones was induced to accept a

25  reduced valuation of his 1999 Chevrolet Venture.  Mr. Jones reasonably believed Mr. Cordice

26  was telling the truth, both when he said they could not consider a reasonable comparable from

27  Mr. Jones, and with regard to the MITCHELL valuation reports.

28

66.     In an attempt to get a fair price, Mr. Jones reviewed the MITCHELL reports and determined some of the vehicles were from out of state and would require a shipping fee to get here.  He called the dealers from the WCTL market survey reports and determined MITCHELL never even contacted the dealer.   Mr. Jones presented this information to Shakir Cordice who took no action to remedy the false and misleading information he was relying on to determine the fair market value.  Mr. Jones was not aware of several other material false representations, such as the salvage title, the failure to consider a reasonable comparable, misrepresentations of the law regarding comparable vehicles, misrepresenting the condition of the vehicle, unlawfully double dipping reductions using the vehicle condition system, and other false and misleading practices.

67.     The fact that Shakir Cordice and PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY continued to rely on the MITCHELL WCTL reports even after the distance and dealer market survey reports were examined is evidence of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY policy to systematically rely on false and misleading data to low-ball their insured.

68.     Shakir Cordice made a final offer to value Mr. Jones' vehicle at $2,800.00.  Based on the representations as alleged above, Mr. Jones accepted the final valuation made by MITCHELL's WCTL to finalize his claim.  At the time of acceptance, Mr. Jones did not know of all the false representations made by PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL.

69.     Aside from the market survey reports and the distance of two of the vehicles, Mr. Jones was unaware of any other misrepresentations.  Mr. Jones did not know that the law in fact requires PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY to consider a comparable vehicle sold in the last 60 days. PROGRESSIVE CASUALTY INSURANCE COMPANY and MITCHELL through Shakir Cordice expressly stated they *could not* consider such a comparable.  This is a false statement made intended to induce Mr. Jones to accept the offer. Mr. Jones did not know the Venture from

Oklahoma was in fact a salvage title vehicle. While he knew that the vehicles was from Oklahoma he did not know it was salvage title. He relied upon the report to the extent they believed this was a comparable vehicle, but in Oklahoma. Mr. Jones was unaware that MITCHELL double dipped in its condition evaluation system, and that the adjusters had no discretion to give a higher rating when in fact a vehicle deserved a higher rating. These and other misrepresentations were relied upon by Mr. Jones when he was determining whether to accept the PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY low ball offer.

70.     In fact, the fair market value of Mr. Jones' vehicle at the time of the crash was significantly higher than the final offer by Shakir Cordice. If MITCHELL had made accurate representations about the comparable it asserted in this case, Mr. Jones would have recovered a significantly higher amount from PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY pursuant to the automobile policy. The fair market value that Progressive would have offered had MITCHELL not provided fraudulent comparable vehicles would have been significantly higher than $2,800.00.

71.     PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY operate on an unequal playing field, compared to its customers and insured. PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY write the policies, have access to vast amounts of information and finances, and have teams of lawyers should a claim be litigated. Insureds on the other hand, usually do not have the knowledge necessary to adequately determine if the value MITCHELL is assigning to the total loss vehicle is fair. Insureds, having just lost the use of their vehicle, are at a significant bargaining disadvantage when PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY offer compensation based on incomparable vehicles because the Insured frequently depend on the immediate payment of money in order to secure a replacement vehicle so they can get themselves or others to school, work or otherwise handle their daily responsibilities.

72.     All of PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL's acts as herein alleged, were done with the prior approval of, with the knowledge of, and/or the express direction or ratification of an officer, director, or managing agent of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL.

73.     The policy by MITCHELL to not disclose a salvage title on its WCTL reports was intentionally orchestrated by MITCHELL and PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY to use smoke and mirrors to hide its fraudulent reports and deceive their insured.  PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY has a policy of checking the insured vehicles to see if it is salvage title, yet MITCHELL somehow does not include that important item on its report.  This was intentionally created by the defendants to avoid detection.  MITCHELL's policy of taking away discretion from adjusters when conditioning the vehicles was made by the officers, directors and managing agents of PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL in an effort to increase profits.

74.     Even after PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY was notified by Bobby Jones that the MITCHELL repots contained some inaccuracies, and those concerns were raised to the managing agents, PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY continued to follow those policies of relying on false and fraudulent data in making their offers to insured.

## CLASS ACTION ALLEGATIONS

75.     This action is brought pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.  Plaintiff brings this class action on behalf of himself and all other persons similarly situated.  Plaintiff brings this

action in a representative capacity to remedy and put an end to the ongoing unlawful, unfair and fraudulent business practices alleged herein, and to seek redress on behalf of all those persons who have been affected thereby.  Private enforcement is necessary and places a disproportionate financial burden on the Plaintiffs in relation to their stake in the matter.

*Class Definition*

76.    Plaintiff brings this action individually and on behalf of the following class (the "Class"):

> <u>Injunctive Relief Class:</u>  The First Party Insureds of Progressive Insurance who, as California Residents, received comparable vehicle information from Progressive or MITCHELL International Inc. for their first party total vehicle property loss during the four years preceding the filing of this action.

> <u>Restitution Subclass(es):</u>

> 1.)    The First Party Insureds of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY who, as California Residents, did not receive adequate compensation for their first party total vehicle property loss during the four years preceding the filing of the action because Defendants PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL International Inc. used vehicles with salvage titles as a "comparable vehicle" without disclosing the fact that they were salvage vehicles, and without making any adjustment for the fact that it used a salvage vehicle as a comparable.

> 2.)    The First Party Insureds of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY who, as California Residents, did not receive adequate compensation for their first party total vehicle property loss during the four years preceding the filing of the action because Defendants PROGRESSIVE CASUALTY INSURANCE

21

1   COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and

2   MITCHELL International Inc. failed to properly seek, use and report market

3   dealer survey reports.

4       3.)   The First Party Insureds of PROGRESSIVE CASUALTY INSURANCE

5   COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY who,

6   as California Residents, did not receive adequate compensation for their first

7   party total vehicle property loss during the four years preceding the filing of

8   the action because PROGRESSIVE CASUALTY INSURANCE COMPANY,

9   PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL

10   International Inc. ignored "comparable vehicles" from licensed dealers that it

11   deemed to be priced too high.

12       4.)   The First Party Insureds of PROGRESSIVE CASUALTY INSURANCE

13   COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY who,

14   as California Residents, did not receive adequate compensation for their first

15   party total vehicle property loss during the four years preceding the filing of

16   the action because PROGRESSIVE CASUALTY INSURANCE COMPANY,

17   PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL

18   International Inc.  ignored the Insured's purchase price for the vehicle when the

19   purchase was made during the time frame in which other supposedly

20   "comparable vehicles" were considered.

21       5.)   The First Party Insureds of PROGRESSIVE CASUALTY INSURANCE

22   COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY who,

23   as California Residents, received comparable vehicle information from

24   PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE

25   SELECT INSURANCE COMPANY or MITCHELL International Inc. for

26   their first party total vehicle property loss during the four years preceding the

27   filing of this action.

28

THIRD AMENDED CLASS ACTION COMPLAINT

6.)     The First Party Insureds of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY who, as California Residents, received comparable vehicle information from PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY or MITCHELL International Inc. for their first party total vehicle property loss during the four years preceding the filing of this action wherein those reports contained condition reports which were improperly categorized and resulted in lower vehicle valuations.

7.)     The First Party Insureds of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY who, as California Residents received less than actual cash value for their claim within the four year period preceding the filing of this action based on improper MITCHELL WCTL condition valuation process, aka 'double dipping'.

77.     Excluded from the Classes are: Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such person's immediate families, and the presiding judge(s) in this case and his, her or their immediate family

*Numerosity*

78.     Plaintiffs are unable to state the precise number of members of the class or subclass (generally referred to together herein as "the class") because that information is in the sole possession of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL.  Plaintiff estimates that the class consists of hundreds, if not thousands, of individuals throughout the State of California, and is so numerous that joinder of all members would be impracticable.  The exact size of the class, and the identity of the members thereof, will be readily ascertainable from the business records of Progressive, MITCHELL and/or its agents. Plaintiff has been informed by counsel for

1    MITCHELL that MITCHELL is not contesting the numerosity prong.

2           *Common Questions of Law and Fact that Predominate*

3           79.    There is a community of interest among the members of the class in that there are

4    questions of law and fact common to the class that predominate over questions affecting only

5    individual members.  Proof of a common set of facts will establish the liability of Defendants, and

6    the right of each member of the class to recover.  These questions of law and fact include:

7                  a.   Whether PROGRESSIVE CASUALTY INSURANCE COMPANY and

8                       PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL

9                       disclosing all relevant information relating to "comparable vehicles" it uses for

10                      total loss vehicles;

11                 b.   Whether the "comparable vehicles" PROGRESSIVE CASUALTY

12                      INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE

13                      COMPANY and MITCHELL used were in fact "comparable vehicles";

14                 c.   Whether MITCHELL, PROGRESSIVE CASUALTY INSURANCE

15                      COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY had a

16                      business practice to reduce total vehicle loss payments by application of a

17                      statistical or mathematical method that resulted in less than actual cash value of

18                      the vehicles being paid the insured;

19                 d.   Whether MITCHELL, PROGRESSIVE CASUALTY INSURANCE

20                      COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY took

21                      unreasonable deductions from "comparable vehicles" in its calculation of the

22                      total loss vehicles;

23                 e.   Whether MITCHELL, PROGRESSIVE CASUALTY INSURANCE

24                      COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY had a

25                      business practice to reduce payments for total loss vehicles based on using

26                      improper "comparable vehicles" in its calculation for the total loss vehicles;

27                 f.   Whether MITCHELL, PROGRESSIVE CASUALTY INSURANCE

28

24

1  COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY failed

2  to adjust the price of "comparable vehicles" based on significant deviating

3  factors;

4     g. Whether MITCHELL failed to disclose material facts about the "comparable

5  vehicles" in it calculation for the total loss vehicles;

6     h. Whether PROGRESSIVE CASUALTY INSURANCE COMPANY and

7  PROGRESSIVE SELECT INSURANCE COMPANY's use of MITCHELL

8  WCTL software to determine actual cash value and calculate the value of total

9  loss vehicles constituted fraud;

10     i. Whether PROGRESSIVE CASUALTY INSURANCE COMPANY and

11  PROGRESSIVE SELECT INSURANCE COMPANY's use of MITCHELL

12  WCTL software to determine actual cash value and calculate the value of total

13  loss vehicles constituted breach of contract;

14     j. Whether PROGRESSIVE CASUALTY INSURANCE COMPANY and

15  PROGRESSIVE SELECT INSURANCE COMPANY's use of MITCHELL

16  WCTL software to determine actual cash value and calculate the value of total

17  loss vehicles constituted an unfair and unlawful business practices;

18     k. Whether PROGRESSIVE CASUALTY INSURANCE COMPANY and

19  PROGRESSIVE SELECT INSURANCE COMPANY's use of MITCHELL

20  WCTL software to determine actual cash value and calculate the value of total

21  loss vehicles constituted negligent misrepresentation;

22     l. Whether PROGRESSIVE CASUALTY INSURANCE COMPANY and

23  PROGRESSIVE SELECT INSURANCE COMPANY's use of MITCHELL

24  WCTL software to determine actual cash value and calculate the value of total

25  loss vehicles constituted a violation of the California Consumer Legal

26  Remedies Act, California Civil Code §1750, et seq.;

27     m. Whether PROGRESSIVE CASUALTY INSURANCE COMPANY,

28

THIRD AMENDED CLASS ACTION COMPLAINT

PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL's "comparable vehicle" representations to its insured were made with the intent to defraud its customers;

n. Whether PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL's refusal to accept as "comparable vehicle" the purchase price of the insured vehicle where the vehicle was purchased within 90 days of the date of loss;

o. Whether PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL conspired to reduce the amount Progressive paid in claims for total loss vehicles through a process of not fully disclosing all relevant information for its proposed "comparable vehicles";

p. The nature and extent of the knowledge PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY had of the scheme MITCHELL implemented;

q. Whether MITCHELL improperly obtained quotes from dealers to use as a "comparable vehicle";

r. Whether MITCHELL profited directly from lowering the "total loss vehicle" price;

s. Whether MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY intentionally schemed to unlawfully reduce the total payments to insured for "total loss vehicles".

80. These questions of law or fact common to the Class overwhelmingly predominate over any individual issues, such that by prevailing on its own claims, Plaintiff will necessarily establish Defendants' liability as to all Class members.

*Typicality*

81.     Plaintiff's claims are typical of those of the class he seeks to represent, and will fairly and adequately represent the interests of the class and subclass.  Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

*Adequacy of Representation*

82.     Plaintiff can and will fairly and adequately represent and protect the interests of the Class.

83.     The claims of Plaintiff are substantially similar, if not identical, to those of absent Class members. Without the Class representation provided by Plaintiff, no Class members will receive legal representation or redress for their injuries.

84.     Plaintiff and Class counsel have the necessary financial resources to adequately and vigorously litigate this class action.  Plaintiff and Class counsel are aware of their fiduciary responsibilities to Class members and are determined to diligently discharge those duties by venously seeking the maximum possible recovery for the Class.

*Superiority*

85.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by the individual class members are small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class members to seek redress individually.  The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Defendant, and would establish incompatible standards of conduct.  Further, a class action is in the interests of justice because many class members are likely unaware that MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY 's conduct is illegal, are unaware of the scope and extent of the scheme, and lack the financial and informational resources to protect their rights.

*23(b)(2) Allegation*

86.     Class certification is appropriate under Federal Rule 23(b)(2) because defendants

have acted on grounds generally applicable to Plaintiff and the Rule 23(b)(2) class members all of whom are at imminent risk of irreparable harm of victimization by defendants' continuing scheme.

### FIRST CAUSE OF ACTION
**Violations of Business and Professions Code § 17200, *et seq*. – Progressive and Mitchell**

87.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

88.     Business and Professions Code § 17200 et seq., often referred to as the "Unfair Competition Law" or "the UCL," defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.  The UCL provides that a court may order injunctive relief and restitution as remedies for any violations of the UCL.

89.     Beginning on an exact date unknown to Plaintiff, but at all times relevant herein and during the four years preceding the filing of the Complaint in this action, MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY committed and they continue to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein in connection with the valuation of claims made on first party insurance claims total loss vehicles.

90.     The business acts and practices alleged herein constitute unfair business practices in that said acts and practices offend public policy and are substantially injurious to the public. The acts and practices of MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY violate California public policy that is tethered to regulations governing persons engaged in the practice of adjusting claims on automobile insurance policies.  For example, the unfair Trade Settlement Practices Regulations, set forth in 10 C.C.R. 2695.6, et seq. were promulgated in order to promote the good faith, prompt, efficient and equitable settlement of claims on a cost effective basis. 10 C.C.R. §2695.1(2).

91.     The business acts and practices alleged hereinabove also violate the public policies

28

1   against misrepresentation and fraud by automobile insurance companies, and their agents, to its

2   insureds.

3          92.     The business acts and practices alleged herein constitute fraudulent business

4   practices in that said acts and practices are likely to deceive members of the public as to their

5   legal rights and obligations, and by use of such deception, may preclude such individuals from

6   exercising legal rights to which they are entitled.  In particular, Defendants' false communications

7   which misuse "comparable vehicles" and the devaluation of total loss vehicle are submitted to its

8   insured, and is meant to be relied upon by its insured.  The information it provides is known to be

9   untrue or deceitful, and intended to induce the insured to settle for a reduced valuation.

10          93.     The unlawful, unfair and fraudulent business acts and practices of MITCHELL,

11   PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT

12   INSURANCE COMPANY described herein present a continuing threat to the public in that

13   MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE

14   SELECT INSURANCE COMPANY are currently engaging in such acts and practices, and will

15   persist and continue to do so unless and until an injunction is issued by this Court.

16          94.     Based on the language, communications, deceptive business practices from

17   MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE

18   SELECT INSURANCE COMPANY, Plaintiff reasonably believed he had no reasonable option

19   but to accept the amount offered by Progressive for his 1999 Chevrolet Venture.

20          95.     As a direct and proximate result of the acts and practices described herein,

21   PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT

22   INSURANCE COMPANY and its agents have received and collected money from Plaintiffs and

23   class members, and failed to fairly pay for claims made by those class members.  MITCHELL

24   earned a fee from is sale us of the WCTL system. MITCHELL, PROGRESSIVE CASUALTY

25   INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY should be

26   ordered to provide full and complete restitution of all amounts collected from class members.

27          96.     Pursuant to Business and Professions Code § 17203, Plaintiff seeks an order

28

1  enjoining MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and

2  PROGRESSIVE SELECT INSURANCE COMPANY from engaging in such acts and practices

3  as hereinabove alleged, and providing appropriate restitution to Plaintiff and members of the

4  class.

5  97.    Pursuant to Code of Civil Procedure § 1021.5, Plaintiff seek recovery of attorneys'

6  fees, costs and expenses incurred in the filing and prosecution of this action.  Plaintiff does not

7  seek any relief greater than or different from the relief sought for the class.

8  WHEREFORE, Plaintiff prays for relief as set forth below from MITCHELL,

9  PROGRESSIVE CASUALTY INSURANCE COMPANY, AND PROGRESSIVE SELECT

10  INSURANCE COMPANY.

11

12  **SECOND CAUSE OF ACTION**
**Fraud – Progressive and Mitchell**

13  98.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

14  herein, and further allege as follows.

15  99.    MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and

16  PROGRESSIVE SELECT INSURANCE COMPANY intentionally and knowingly made false

17  statements to Bobby Jones about the value of his car to induce him to accept a reduced amount on

18  his automobile insurance claim.  These are outlined at length above.

19  100.    The agents and employees of PROGRESSIVE CASUALTY INSURANCE

20  COMPANY relied upon the misrepresentations of MITCHELL, PROGRESSIVE CASUALTY

21  INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY, and

22  based on the deceptive business practices, enforced a system of low-ball offers without knowing

23  of the deceptive and fraudulent nature.

24  101.    Bobby Jones reasonably relied upon the misrepresentations of MITCHELL,

25  PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT

26  INSURANCE COMPANY made by their agents and employees.  Specifically, but not limited to,

27  Mr. Jones was unaware that the vehicle from Oklahoma was salvage title at any time during the

28

transaction.  Mr. Jones relied on this misrepresentation to the extent that it represented the market for his type of car in Oklahoma, and was at least some gauge for its value.  Had he known it was salvage title, he could have used information to obtain the actual cash value of his total loss vehicle. He also reasonably relied on the claims adjuster's representations that they could not offer any more on the car.

102.    As a result of Mr. Jones' reliance on the aforementioned false representations, Mr. Jones saw no viable avenue to fight PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY based on the MITCHELL WCTL reports and conduct.

WHEREFORE, Plaintiff prays for compensatory, punitive, declaratory and injunctive relief MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY as set forth below.

## THIRD CAUSE OF ACTION
### Negligent Misrepresentation – Progressive and Mitchell

103.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

104.    MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY negligently made false statements to Bobby Jones about the value of his car to induce him to accept a reduced amount on his automobile insurance claim.  They should have known the statements outlined at length above were false.

105.    The agents and employees of PROGRESSIVE CASUALTY INSURANCE COMPANY relied upon the misrepresentations of MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY, and based on the deceptive business practices, enforced a system of low-ball offers without knowing of the deceptive and fraudulent nature.

106.    Bobby Jones reasonably relied upon the misrepresentations of MITCHELL,

31

PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY made by their agents and employees.  Specifically, but not limited to, Mr. Jones was unaware that the vehicle from Oklahoma was salvage title at any time during the transaction.  Mr. Jones relied on this misrepresentation to the extent that it represented the market for his type of car in Oklahoma, and was at least some gauge for its value.  Had he known it was salvage title, he could have used information to obtain the actual cash value of his total loss vehicle. He also reasonably relied on the claims adjuster's representations that they could not offer any more on the car.

107.    As a result of Mr. Jones' reliance on the aforementioned false representations, Mr. Jones saw no viable avenue to fight PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY based on the MITCHELL WCTL reports and conduct.

WHEREFORE, Plaintiff prays for relief from MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY as set forth below.

### FOURTH CAUSE OF ACTION
**Breach of Contract – Progressive**

108.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

109.    PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY agreed to pay Bobby Jones for the actual cash value of his vehicle if it was a total loss vehicle, based on the contract contained in Exhibit A, and the provisions of the contract alleged herein.

110.    Progressive breached this contract by misrepresenting material facts to Mr. Jones Detriment, and failing to pay the actual cash value for his total loss vehicle..

111.    Progressive breached the contract by not utilizing claims reviews policies within the requirements set forth in this policy, attached as Exhibit A.

112.    Progressive breached the contract by failing adhering to a system that systemically low balls offers to insured in order to increase profits.  The adjusters are given no discern to change the number derived by the MITCHELL WCTL system.  Based on the allegations above, MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY entered into an intentional scheme to misrepresent the quality of the comparable vehicles and reduce the condition grades of the insured vehicles.  This resulted in the insureds not getting actual cash value.

113.    As a result, Mr. Jones accepted less than actual cash value, was deprived of the use of his vehicle, and was otherwise damaged.

WHEREFORE, Plaintiff prays for relief from PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY as set forth below.

## FIFTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing – Progressive

114.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

115.    At all times herein mentioned, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY knew, or in the exercise of good faith reasonably should have known that Plaintiff was legally entitled to recover the benefits under the aforementioned insurance policy, and the MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY was obligated to provide Plaintiff with benefits under the insurance policy.

116.    PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY intentionally, maliciously, and oppressively conducted themselves willfully and wrongfully and refused, and failed, to pay the benefits of the policy to Plaintiff, despite the fact that the benefits under the policy were due and payable to the Plaintiff and the Plaintiff was entitled to the full benefits of the policy.

117.     PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY unreasonably failed to pay Plaintiff's claim for benefits under the total loss vehicle provisions of his policy under the policy.  All of Progressive's acts as herein alleged, were done with the prior approval of, with the knowledge of, and/or the express direction or ratification of an officer, director, or managing agent of Progressive, consistent with the definitions contained in *California Code of Regulations,* Title 10, Section 2695.12.

118.     As a proximate result of Progressive's wrongful conduct, as aforementioned, Plaintiff has been denied the actual cash value for his total loss vehicle.

119.     Progressive's actions in wrongfully reducing the value of total loss vehicles, as aforementioned herein, constituted a pattern and practice of Progressive, which is designed to wrongfully withhold payment of claims with the intent of ignoring the interest of their insured.

WHEREFORE, Plaintiff prays for relief from PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY as set forth below.

### SIXTH CAUSE OF ACTION

**Intentional Interference with Contractual Relations - Mitchell**

120. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further allege as follows.

121.     At all times herein mentioned, MITCHELL knew of the insurance policy contract between PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY and Bobby Jones. MITCHELL knew Bobby Jones was entitled to the actual cash value of his total loss vehicle, and that PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY were obligated to provide those benefits under the insurance policy.

122.     MITCHELL's conduct prevented PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY from paying Bobby Jones actual cash value of his total loss vehicle, and made the process for Bobby Jones more

1   expensive and more difficult.

2         123.   MITCHELL's aforementioned conduct was intended to interfere with the

3   aforementioned contract, and that disruption of the contract was likely or substantially certain to

4   occur.

5         124.   As a proximate result of MITCHELL's wrongful conduct, as aforementioned,

6   Plaintiff has been denied the actual cash value for his total loss vehicle, incurred additional costs

7   related to his loss of use, and was otherwise damages.

8         125.   MITCHELL's wrongful conduct was a substantial damages in the damages

9   suffered and incurred by Bobby Jones.

10         WHEREFORE, Plaintiff prays for relief from MITCHELL as set forth below.

11   **SEVENTH CAUSE OF ACTION**

12   **Violation of California Consumer Remedies Act – Progressive and Mitchell**

13         126.   Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

14   herein, and further allege as follows.

15         127.   At all times herein mentioned, PROGRESSIVE CASUALTY INSURANCE

16   COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL made

17   false, misleading knew, or in the exercise of good faith reasonably should have known that

18   Plaintiff was legally entitled to recover the benefits under the aforementioned insurance policy,

19   and the Progressive was obligated to provide Plaintiff with benefits under the insurance policy.

20         128.   The conduct by PROGRESSIVE CASUALTY INSURANCE COMPANY and

21   PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL to misrepresent the

22   comparable vehicles' value, to submit false dealer reports, and refusal to consider comparable

23   vehicles by the insureds, cause a tangible burden to each consumer/insured and increased the cost

24   to each insured.  The consumer/insured faced a choice of either settling quickly for a low-ball

25   offer or to go through a long drawn out fight, where PROGRESSIVE CASUALTY INSURANCE

26   COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY clearly has the upper

27   hand.

28

THIRD AMENDED CLASS ACTION COMPLAINT

129.    PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL intentionally, maliciously, and oppressively conducted themselves willfully and wrongfully and made material misrepresentations about the condition of comparable vehicles to every one of its insured.

130.    PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY unreasonably failed to pay Plaintiff's claim for benefits under the total loss vehicle provisions of his policy under the policy.

131.    MITCHELL prepared the misleading and deceptive reports knowing they would be distributed to PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY's insureds for use in determining the actual cash value.

132.    As a proximate result of PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY and MITCHELL's wrongful conduct, as aforementioned, Plaintiff has been denied the reasonable value for his total loss vehicle, had incurred reasonable rental car costs for the delay in resolution of the matter.

133.    PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE SELECT INSURANCE COMPANY's actions in wrongfully reducing the value of total loss vehicles, as aforementioned herein, constituted a pattern and practice of Progressive, which is designed to wrongfully withhold payment of claims with the intent of ignoring the interest of their insured.

WHEREFORE, Plaintiff prays for relief from MITCHELL, PROGRESSIVE CASUALTY INSURANCE COMPANY, and PROGRESSIVE SELECT INSURANCE COMPANY as set forth below.


## **PRAYER FOR RELIEF**

Plaintiff respectfully prays for relief as follows:

1.      For an order certifying the proposed class and subclass;

2.      For an order finding and declaring that Progressive and MITCHELL's acts and

36

practices as challenged herein are unlawful, unfair and fraudulent;

3.    For an order preliminarily and permanently enjoining Progressive and MITCHELL from engaging in the practices challenged herein;

4.    For an order on behalf of the subclass against Progressive and MITCHELL of restitution and/or disgorgement in an amount to be determined at trial;

5.    For an accounting;

6.    For civil and statutory damages;

7.    For pre-judgment interest to the extent permitted by law;

8.    For an award of attorneys' fees, costs and expenses incurred in the investigation, filing and prosecution of this action under any applicable provision of law;

9.    For interest provided by law including, but not limited to, *California Civil Code* section 3291.

10.    For declaratory relief; and

11.    For punitive damages;

12.    For such other and further relief as the Court deems proper.


Dated: November 9, 2017                          Respectfully Submitted,


                                     ____/S/_____
                                     DAVID A. KLECZEK
                                     Attorney for Plaintiff

THIRD AMENDED CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all triable claims asserted in this Complaint.

Dated: November 9, 2017                    Respectfully Submitted,


                                           ____/S/_____
                                           DAVID A. KLECZEK
                                           Attorney for Plaintiff

THIRD AMENDED CLASS ACTION COMPLAINT